[Cite as *Little Aquanauts, L.L.C. v. Makovich & Pusti Architects, Inc.*, 2021-Ohio-942.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

LITTLE AQUANAUTS, L.L.C., :

    Plaintiff-Appellee, :

                                             No. 109594

    v. :

MAKOVICH & PUSTI ARCHITECTS,
INC., ET AL., :

    Defendants-Appellants. :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** March 25, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-19-926299

---

### *Appearances:*

Harvey + Abens, Co., L.P.A., David L. Harvey III, and Matthew B. Abens, *for appellee*.

Shumaker, Loop & Kendrick, L.L.P., Nicholas T. Stack, and Nicholas A. Huckaby, *for appellant*.

FRANK D. CELEBREZZE, JR., J.:

{¶ 1} Appellant Endless Pools, Inc. ("Endless Pools") challenges the trial court's judgment entry denying its motion to compel arbitration or, alternatively,

motion to dismiss with memorandum in support. After a thorough review of the law and facts, we affirm the judgment of the trial court.

## I. Factual and Procedural History

**{¶ 2}** Appellee Little Aquanauts, L.L.C. ("Aquanauts") is in the business of teaching water self-rescue training to children. Aquanauts leased space for its business, but the premises did not have a pool, so Aquanauts looked into installing an endless pool. In fall 2016, Aquanauts initiated conversations with Endless Pools regarding purchasing and installing one of their pools. Aquanauts alleged that it relied on representations made by Endless Pools in selecting a pool design that would be appropriate for and work in Aquanauts' premises.

**{¶ 3}** Aquanauts ultimately purchased the pool on Endless Pools' website. As part of the finalization process, Aquanauts was given an opportunity to view the Terms and Conditions of Sale ("Terms and Conditions") that would apply to the purchase. The pertinent sections of the Terms and Conditions state as follows:

> 1. Terms and Conditions:
> Any terms and conditions are limited to those contained in these Terms and Conditions of Sale. By finalizing your order and choosing the I Accept option, you are agreeing to the terms contained herein. * * * These Terms and Conditions of Sale constitute the full and entire agreement between the customer and Endless Pools pertaining to this sale.
>
> 2. Governing Law:
> The Laws of the Commonwealth of Pennsylvania will govern this sale and these Terms and Conditions of Sale between Endless Pools and the customer without regard to conflicts of laws or rules. Any arbitration or litigation will be conducted in Delaware County, Pennsylvania. The customer consents to the jurisdiction of the Federal and State courts located in Pennsylvania, and submits to the jurisdiction thereof and

dismisses the right to change venue. The customer also consents to the application of personal jurisdiction by any such court with respect to such proceeding.

3. Limitation of Liability:
* * * Endless Pools shall not be responsible for any permits, fees, licenses, and authorizations necessary to comply with local or state codes or requirements. Endless Pools takes no responsibility for any site preparation, including, but not limited to, preparing any slab or foundation. Any Endless Pools product installed above grade must be placed on a properly engineered structure.

* * *

6. Disputes:
Any disputes arising under these Terms and Conditions of Sale must be submitted to binding arbitration before a JAMS arbitrator in Philadelphia, Pennsylvania. The party in whose favor a judgment is rendered in arbitration shall be reimbursed for its legal fees and costs by the other party, in addition to any other damages awarded by the arbitrator.

{¶ 4} Construction and installation of the pool commenced, and, as it was nearing completion, Aquanauts learned that the Cuyahoga County Board of Health was required to inspect the pool and corresponding systems. Upon contacting the Board of Health, Aquanauts was informed that it should have sought the approval of the Board of Health prior to the pool's construction and installation. Aquanauts attempted to submit the paperwork belatedly, but it was rejected. Aquanauts was informed that its pool was not compliant with the state of Ohio's regulations.

{¶ 5} Aquanauts was never able to use the pool and therefore was never able to open for business; Aquanauts was forced to vacate its leased space.

{¶ 6} Aquanauts filed suit against Endless Pools, along with the architect of the project and the contractor who installed the endless pool. Pertinent to this

appeal, Aquanauts alleged claims against Endless Pools for negligent misrepresentation and violation of Ohio's Deceptive Trade Practices Act.

{¶ 7} Endless Pools moved to compel arbitration or, in the alternative, to dismiss the case, arguing that Aquanauts had agreed to arbitrate any claims. Aquanauts opposed the motion, asserting that its claims fell outside of the scope of the arbitration provision in the Terms and Conditions. The trial court denied Endless Pools' motion without analysis. Endless Pools then filed the instant appeal, raising one assignment of error for our review:

> The trial court erred in denying Endless Pools' motion to dismiss [Aquanauts'] claims against Endless Pools or, alternatively, to stay the action and compel [Aquanauts] to re-assert its claims in arbitration.

## II. Law and Discussion

{¶ 8} This court applies a de novo standard of review when evaluating the scope of an arbitration agreement, that is, whether a party has agreed to submit a certain issue to arbitration. *Seyfried v. O'Brien*, 2017-Ohio-286, 81 N.E.3d 961, ¶ 18 (8th Dist.), citing *McCaskey v. Sanford-Brown College*, 8th Dist. Cuyahoga No. 97261, 2012-Ohio-1543, ¶ 7. Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

{¶ 9} Aquanauts does not dispute that it agreed to the Terms and Conditions, which contained the arbitration provision. Endless Pools argues that the arbitration provision is broad and covers any dispute "arising from" the Terms and Conditions. Further, Endless Pools asserts that, even if the arbitration provision were not so all-

encompassing, Aquanauts' claims would still be covered because Endless Pools argues that Aquanauts' claims are for breach of contract, but are creatively pled as negligent misrepresentation and violation of Ohio's Deceptive Trade Practices Act.

{¶ 10} In addition, Endless Pools contends that Aquanauts' claims directly involve a provision from the Terms and Conditions, to wit: "Endless Pools shall not be responsible for any permits, fees, licenses, and authorizations necessary to comply with local or state codes or requirements." Consequently, Endless Pools maintains that arbitration of Aquanauts' claims is mandatory.

{¶ 11} In opposition, Aquanauts argues that its claims are not subject to the arbitration provision because, by the very language of the Terms and Conditions, the arbitration clause is quite narrow. Aquanauts maintains that its claims do not arise from the Terms and Conditions, but instead are premised upon representations by Endless Pools that occurred prior to entering the purchase. Aquanauts is not alleging any issues with the subjects included in the Terms and Conditions. Rather, its allegations stem from the duty of Endless Pools to communicate, prior to the sale, correct and relevant information to guide or assist Aquanauts in its business decision. Aquanauts asserts that Endless Pools' duty to convey accurate information about its pools existed independently of the Terms and Conditions.

{¶ 12} Ohio recognizes a "strong public policy" in favor of arbitration and the enforcement of arbitration provisions. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15; *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, 884 N.E.2d 12, ¶ 24; R.C. 2711.01(A). When

ruling on a motion to compel arbitration, however, the "proper focus" is on whether the parties actually agreed to arbitrate the matter at issue, i.e., the language and scope of the arbitration provision, not the general policies of the arbitration statutes. *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 20.

{¶ 13} A "presumption favoring arbitration" arises when a claim in dispute "falls within the scope of the arbitration provision." *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 471, 700 N.E.2d 859 (1998); *Taylor Bldg.* at ¶ 27; *Natale v. Frantz Ward, L.L.P.*, 2018-Ohio-1412, 110 N.E.3d 829, ¶ 9 (8th Dist.). Although a party cannot be compelled to arbitrate a dispute the party has not agreed to submit to arbitration, *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665, 687 N.E.2d 1352 (1998), "[a]ny doubts regarding arbitrability should be resolved in favor of arbitration," *Natale* at ¶ 9, citing *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, 842 N.E.2d 488, ¶ 14.

{¶ 14} The threshold question is whether the parties agreed to arbitrate the issues. In *Aetna Health, Inc.*, the Supreme Court of Ohio reiterated that the test for determining the arbitrability of a given dispute involves four rules:

> (1) that "'arbitration is a matter of contract and a party cannot be required to so submit to arbitration any dispute which he has not agreed to so submit'"; (2) that the question whether a particular claim is arbitrable is one of law for the court to decide; (3) that when deciding whether the parties have agreed to submit a particular claim to arbitration, a court may not rule on the potential merits of the underlying claim; and (4) that when a "'contract contains an arbitration

provision, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.""'

*Id.* at ¶ 5, quoting *Cohen v. PaineWebber, Inc.*, 1st Dist. Hamilton No. C-010312, 2002-Ohio-196, ¶ 9, quoting *Council of Smaller Ents.* at 665-666, citing *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). "'[A] proper method of analysis * * * is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement.'" *Aetna Health, Inc.* at ¶ 6, quoting *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir.2003).

{¶ 15} "[W]hile torts may sometimes be covered by arbitration clauses where the allegations underlying the claims touch matters covered by the arbitration agreement, tort claims that may be asserted independently, without reference to the contract, fall outside of the scope of an arbitration provision." *Arnold v. Burger King*, 2015-Ohio-4485, 48 N.E.3d 69, ¶ 32 (8th Dist.), citing *Fazio* at ¶ 6; *see also Complete Personnel Logistics, Inc. v. Patton*, 8th Dist. Cuyahoga No. 86857, 2006-Ohio-3356, ¶ 15 ("[T]ort claims that may be asserted independently, without reference to the contract, fall outside the scope of the arbitration provision.").

{¶ 16} We agree with Aquanauts that the arbitration provision in this matter is narrow in scope and covers solely disputes "arising under these Terms and Conditions of Sale." The document containing the Terms and Conditions is brief and only addresses the following areas: Aquanauts' acceptance and the extent of the

terms and conditions contained therein, the governing law, limitation of liability, payments, international shipments, and disputes.

{¶ 17} Aquanauts' claims allege that Endless Pools represented that the selected pool would comply with all applicable codes and laws, that Endless Pools supplied false information regarding the suitability and appropriateness of its product for Aquanauts' space, and that the pool was of a particular standard and quality necessary for approval which it, in fact, was not. The Terms and Conditions do not contain any information relating to the sale or specifics regarding the pool, and as such, do not pertain to the claims alleged by Aquanauts. Accordingly, Aquanauts' claims can be asserted without any reference to the Terms and Conditions.

{¶ 18} Endless Pools argues that Aquanauts' claim that Endless Pools represented that the pool would be installed according to all applicable codes and laws directly implicates Section 3 of the Terms and Conditions, "Limitation of Liability" ("Endless Pools shall not be responsible for any permits, fees, licenses, and authorizations necessary to comply with local or state codes or requirements."). However, Endless Pools' argument is misplaced. Aquanauts' claims are not alleging that Endless Pools failed to obtain a permit, fee, license, or authorization, and thus do not fall under the asserted provision.

{¶ 19} Finally, Endless Pools' argument that the parties agreed to submit any issue of arbitrability to the arbitrator is without merit. "'Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to

arbitrate is to be decided by the court, not the arbitrator.'" *Pappas v. Richmond Towers L.L.C.*, 8th Dist. Cuyahoga No. 94558, 2011-Ohio-5249, ¶ 14, quoting *Belmont County Sheriff v. FOP, Ohio Labor Council, Inc.*, 104 Ohio St.3d 568, 2004-Ohio-7106, 820 N.E.2d 918, ¶ 13, citing *Council of Smaller Ents.*, 80 Ohio St.3d at 666, 687 N.E.2d 1352.

{¶ 20} Endless Pools argues that Aquanauts agreed to have the arbitrator determine the issue of arbitrability because the arbitration clause provides that dispute will be submitted to a JAMS arbitrator, and JAMS' rules state that such questions shall be determined by the arbitrator, but this is insufficient. Any agreement for arbitrability to be decided by the arbitrator rather than the court must be spelled out in the arbitration clause itself. *See Pappas* at ¶ 16. The arbitration clause in the Terms and Conditions is silent as to jurisdiction; accordingly, the parties did not unmistakably provide that the issue of arbitrability was to be determined by the arbitrator. The issue was therefore properly determined by the court.

{¶ 21} The trial court properly denied the motion to compel arbitration, and Endless Pools' assignment of error is overruled.

### III. Conclusion

{¶ 22} Aquanauts' claims do not fall within the scope of the arbitration clause. Thus, the trial court did not err in denying Endless Pools' motion to compel

arbitration or, alternatively, motion to dismiss. Endless Pools' sole assignment of error is overruled, and the judgment of the trial court is affirmed.

{¶ 23} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

FRANK D. CELEBREZZE, JR., JUDGE

ANITA LASTER MAYS, P.J., and
KATHLEEN ANN KEOUGH, J., CONCUR