[Cite as *Westlake Servs.,*
*L.L.C. v. Chandler*, 2023-Ohio-3714.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

WESTLAKE SERVICES, LLC,      :

    Plaintiff-Appellant,      :      No. 112313

    v.      :

SAMANTHA M. CHANDLER,      :

    Defendant-Appellee.      :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 12, 2023

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Case No. CV-21-944905

---

***Appearances:***

McGlinchey Stafford and James W. Sandy, *for appellant*.

Frederick & Berler LLC, Ronald I. Frederick and Michael
L. Berler, *for appellee*.

EILEEN A. GALLAGHER, J.:

{¶ 1} Plaintiff-appellant Westlake Services, LLC d.b.a. Westlake Financial Services ("Westlake Services") appeals the trial court's decision denying its "motion to compel arbitration including arbitration of threshold questions of arbitrability and motion to stay case." The motion was based on an arbitration clause in a buyer's

order agreement that had been entered into between plaintiff-appellee Samantha Chandler and Clerac LLC d.b.a. Enterprise Car Sales ("Clerac") in connection with her purchase of a used car.

{¶ 2} Westlake Services contends that the trial court committed reversible error by refusing to delegate "threshold questions of arbitrability"— specifically, whether Westlake Services could enforce the arbitration agreement in the buyer's order as a nonsignatory assignee of Clerac and whether Westlake Services waived its right (if any) to enforce the arbitration agreement — to an arbitrator and, instead, decided those issues itself. Westlake Services contends that these "threshold questions" should have been delegated to an arbitrator based on the "incorporation by reference" of the American Arbitration Association ("AAA") rules in the arbitration agreement. Westlake Services also argues that because Chandler did not "specifically challenge" the validity of the arbitration agreement's "delegation clause" below, the trial court lacked authority to disregard it.

{¶ 3} For the reasons that follow, we affirm the trial court.

**Procedural and Factual Background**

{¶ 4} On October 21, 2017, Chandler executed two agreements with Clerac: (1) a "vehicle buyer(s)' order" for the purchase of a used 2016 Ford Focus and a service contract (the "buyer's order") and (2) a retail installment sales contract for the financing of the vehicle and service contract (the "financing agreement"). The total amount financed was $14,204.10 at an annual percentage rate of 23.99% for 72 months.

**The Buyer's Order and the Arbitration Provision**

{¶ 5}   With respect to what constituted the agreement between the parties, the buyer's order states:

> The front and back of this Contract and, if this is a credit sale, the retail installment sales contract of even date between Seller and Buyer, any bill of sale and any documents related to any service (such as warranties or insurance) for which a charge is made in this Contract or in the retail installment contract (if any) comprise the entire agreement affecting this purchase and no other agreement or understanding of any nature concerning same has been made or entered into.
>
> * * *
>
> THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION WHICH MAY BE ENFORCED BY THE PARTIES.
> If any term or condition of this Contract conflicts with a term or condition of the retail installment sales contract signed by Buyer, the term and condition provided in the retail installment sales contract will control.

In the buyer's order, "Seller" is defined as Clerac and "Buyer" is defined as Chandler.

{¶ 6}   Paragraph 16 of the buyer's order contains the following arbitration provision (the "arbitration agreement"):

> Arbitration Agreement.
>
> PLEASE READ THIS ARBITRATION AGREEMENT CAREFULLY[.] IT AFFECTS YOUR RIGHTS.
>
> (In this notice, the word "you" refers to The Buyer(s).[)]  A "dispute" is any controversy or claim by or between us (including our officers, directors, employees, affiliates or representatives) and you of any kind or nature whatsoever (including any controversy or claim relating to or arising out of our financing of your purchase of the Vehicle, if applicable).  "Dispute" shall have the broadest possible meaning.  Any dispute shall, to the extent not prohibited by applicable law, upon the election of either you or us, be settled by arbitration in accordance with the Federal Arbitration Act and the rules of the American Arbitration

Association ("AAA") or any other national or regional arbitration organization you select that is acceptable to us. You may initiate arbitration by filing a claim with the arbitration organization. AAA rules are available online at www.adr.org, or by calling at 1-800-778-7879. The arbitration shall take place in the county and state where you bought the Vehicle, unless we agree otherwise or unless the law requires otherwise. The arbitrator shall follow applicable substantive law and shall render a written opinion. There shall be no class action arbitration or relief, and no joinder of parties other than parties to your contract, under this Arbitration Agreement. We agree not to elect arbitration of a dispute of an individual (as opposed to a class) claim brought and maintained against us in an amount of $10,000 or less. The arbitration award and/or order shall be final and binding on the parties to the arbitration. Confirmation of and entry of judgment on the award and/or decision rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. Upon your request, we will pay for all arbitration filing, administration, and arbitrator fees for any arbitration initiated in accordance with the requirements herein. Unless otherwise provided by law, each party shall bear its own other costs and expenses (including attorneys' fees and expenses) in connection with any arbitration proceeding, and we will pay any other costs that the arbitrator determines we must pay in order to assure that this Arbitration Agreement is enforceable. If documents you sign in connection with your vehicle purchase contain more than one arbitration agreement and such arbitration agreements have inconsistent terms, you may select the arbitration agreement that will apply. You may elect to cancel this Arbitration Agreement if you do so in writing, within 30 days of the date of this Order, mailed by registered mail, returned receipt requested, to Enterprise Rent-A-Car, General Counsel, 600 Corporate Park Dr., St. Louis, MO 63105.

NOTICE OF ARBITRATION AGREEMENT

- THIS AGREEMENT PROVIDES THAT UPON ELECTION BY YOU OR THE SELLER, ALL DISPUTES BETWEEN YOU AND SELLER WILL BE RESOLVED BY BINDING ARBITRATION.

- IF EITHER YOU OR THE SELLER ELECTS TO ARBITRATE A DISPUTE, YOU GIVE UP YOUR RIGHT TO GO TO COURT TO ASSERT OR DEFEND YOUR RIGHTS UNDER THIS CONTRACT, EXCEPT FOR MATTERS THAT YOU MAY TAKE TO SMALL CLAIMS COURT.

- YOUR RIGHTS WILL BE DETERMINED BY A <u>NEUTRAL ARBITRATOR, NOT</u> A JUDGE OR JURY.

- YOU ARE ENTITLED TO A <u>FAIR HEARING, BUT</u> THE ARBITRATION PROCEDURES ARE <u>SIMPLER AND MORE LIMITED THAN RULES APPLICABLE IN COURT</u>.

- ARBITRATION DECISIONS ARE AS ENFORCEABLE AS ANY COURT ORDER AND ARE SUBJECT TO VERY <u>LIMITED REVIEW BY A COURT</u>.

This Arbitration Agreement shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Agreement, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the rest shall remain enforceable. If a waiver of class action rights is deemed or found to be unenforceable for any reason in a case in which class action allegations have been made[,] the rest of this Arbitration Agreement shall be unenforceable.

(Emphasis sic.)

**The Financing Agreement**

{¶ 7} The parties to the financing agreement were Chandler (referred to as the "Buyer") and Clerac (referred to the "Seller-Creditor"). The financing agreement states that "[t]he Seller may assign this contract and retain its right to receive a part of the Finance Charge." (Emphasis deleted.) It further states: "This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it." The financing agreement contains a choice-of-law provision that states that "[f]ederal law and the law of the state of our address shown on the front of this contract," i.e., Ohio law, "apply to this contract." The financing agreement does not contain an arbitration

provision. Clerac assigned its interest in the financing agreement to Westlake Services.

**The Litigation**

{¶ 8} On March 9, 2021, Westlake Services filed a collection action against Chandler in the Cuyahoga County Court of Common Pleas. Westlake Services alleged that Chandler had breached the financing agreement and owed Westlake Services $11,760.86 after Westlake Services repossessed the vehicle and sold it at auction. Westlake Services requested that judgment be entered against Chandler for $11,760.86 plus interest at the rate of 23.99 percent per annum from May 29, 2020 and costs. As exhibits to its complaint, Westlake Services attached copies of the financing agreement, a record of Chandler's "payment history," two notices from Westlake Services of its "plan to sell" the vehicle and an "accounting to debtor," setting forth the deficiency Chandler allegedly owed following the sale of the vehicle.

{¶ 9} On March 26, 2021, Chandler, pro se, filed an answer to the complaint. In her answer, Chandler alleged that she had had serious problems with the vehicle almost immediately after purchase, that Clerac had failed to honor the warranty she had purchased and that Clerac had failed to notify Chandler, before she purchased the vehicle, of a recall/defect with the vehicle that caused the vehicle to stall.

{¶ 10} Chandler thereafter retained counsel. She was granted leave to file an amended answer and counterclaim in which she denied the material allegations of the complaint, raised various affirmative defenses and asserted a counterclaim

against Westlake Services based on alleged violations of the Ohio Uniform Commercial Code ("OUCC"), the Retail Installment Sales Act ("RISA") and the Ohio Consumer Sales Practices Act ("OCSPA"). Chandler alleged that the notices Westlake Services sent Chandler informing her that her vehicle would be sold at auction did not comply with the OUCC or RISA because they did not properly identify the time of the auction, did not identify a minimum bid price for the sale of the vehicle and did not notify Chandler that she could attend the auction. Chandler further alleged that the transaction was unconscionable under the OCSPA because Clerac had sold Chandler the vehicle for "far more than it was worth" (given the recall and "major mechanical difficulties" with the vehicle) and that Westlake Services "knew or should have known the vehicle was not worth that price, or all the[] extra interest she would have to pay on the contract" when it financed the purchase of the vehicle. Chandler sought to recover unspecified economic and noneconomic damages, waiver of any deficiency under RISA, statutory damages and attorney fees.

{¶ 11} On August 6, 2021, Westlake Services filed a reply to Chandler's counterclaim in which it denied any violations of law and asserted various affirmative defenses. It did not assert, at that time, that the parties' dispute was subject to an arbitration agreement. A scheduling order was entered and the parties proceeded with discovery.

{¶ 12} In March 2022, Chandler retained additional counsel. On March 14, 2022, after deadlines for the completion of fact discovery, the exchange of expert

reports and the filing of dispositive motions had passed, Chandler filed a motion for leave to amend her counterclaim based on documents Westlake Services had allegedly produced during discovery. As set forth in her motion for leave, Chandler sought to "revise her claims to reflect the evidence and more properly state her claims under RISA and OUCC" and also to assert claims on a class-wide basis.

{¶ 13} Westlake Services retained new counsel and opposed the motion for leave, arguing that Chandler had unduly delayed in seeking to amend her counterclaim, that the claims sought to be asserted in the amended counterclaim were based on the "exact same" documents attached to Westlake Services' complaint — not some new documents or information obtained through discovery — and that, given the stage of the litigation, granting the motion would result in "unfair prejudice" to Westlake Services. In a footnote, Westlake Services stated that it "reserve[d] any and all defenses to Defendant's proposed Amended Class-Action Counterclaims, including the right to demand arbitration of the same depending on how this Court rules on Defendant's Motion."

{¶ 14} The trial court granted the motion for leave, and, on May 11, 2022, Chandler filed her "first amended class action counterclaim" in which she asserted claims on behalf of herself and putative class members for alleged violations of RISA and the OUCC. Specifically, Chandler alleged that (1) the post-repossession notices of sale Westlake Services sent to Chandler and other similarly situated class members violated R.C. 1317.16, 1309.613 and 1309.614(B), (2) Westlake Services' practice of failing to properly notify debtors of their post-repossession rights and of

selling vehicles for less than a reasonable price deprived debtors of a commercially reasonable sale of their vehicles in violation of R.C. 1309.610 and (3) Westlake Services had failed to properly account for sale proceeds in violation of R.C. 1309.616. Chandler sought to have the case certified as a class action with three proposed classes. She requested declaratory and injunctive relief and an award of actual damages, statutory damages, attorney fees, interest and costs. In support of her claims, Chandler attached copies of the financing agreement, the two notices from Westlake Financial Services of its "plan to sell" the vehicle, an "accounting to debtor" and portions of Chandler's "payment history" that were attached to Westlake Services' complaint along with a copy of an "auction vehicle report" for the vehicle, to her first amended class-action counterclaim.

{¶ 15} On June 16, 2022, Westlake Services filed a reply to Chandler's first amended class-action counterclaim. Among the affirmative defenses Westlake Services asserted was the following defense based on the arbitration provision in the buyer's order:

> Defendant is precluded from proceeding in a judicial forum because she agreed to arbitrate her claims. The agreement by the parties to arbitrate their disputes is specifically enforceable pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* The Arbitration Clause into which Defendant entered precludes her from asserting claims on a class-wide basis. Potential class members are also precluded from proceeding in a judicial forum because they too agreed to arbitrate their claims.

**Motion to Compel Arbitration**

{¶ 16} That same day, Westlake Services also filed a "motion to compel arbitration including arbitration of threshold questions of arbitrability and motion to stay case" ("motion to compel arbitration"). In support of the motion, Westlake Services attached excerpts from the American Arbitration Association ("AAA") Consumer Arbitration Rules (amended and effective September 1, 2014) and an affidavit from John Schwartz, a senior legal analyst employed by Westlake Services, in which he averred that he was familiar with Westlake Services' records relating to Chandler's account and purchase of the vehicle (including the buyer's order and financing agreement), that the buyer's order and financing agreement had been "assigned to Westlake [Services]" and that "true and correct" copies of the buyer's order and financing agreement were attached to the affidavit.[1]

{¶ 17} Westlake Services argued that the arbitration provision in the buyer's order "was incorporated into and part of the entire purchase of the Vehicle" and that Westlake Services was entitled to enforce the arbitration provision as a result of Clerac's assignment of the financing agreement to Westlake Services. Westlake Services further argued that, due to the arbitration provision's "incorporation" of AAA rules, all "gateway questions of arbitrability," such as whether the parties had agreed to arbitrate, were for the arbitrator — and not the trial court — to decide.

---

[1] Although Schwartz asserts in his affidavit that both the buyer's order and the financing agreement were assigned to Westlake Services, there is no evidence in the record — aside from Schwartz's assertion — that Clerac's rights under the buyer's order were specifically assigned to Westlake Services. The assignment at issue, appended to the bottom of the financing agreement, states: "Seller assigns its interest in this contract to Westlake Financial Services."

Westlake Services requested that the trial court find that a valid arbitration agreement existed, stay the case and order that Chandler arbitrate her claims and any threshold issues of arbitrability, including any issues related to the validity or enforceability of the arbitration agreement.

{¶ 18} Chandler opposed the motion. She argued that Westlake Services had waived its right to arbitrate by litigating the case and, regardless, could not enforce the arbitration agreement because (1) Westlake Services was not a party to, was not an assignee of and otherwise had no rights under the buyer's order and (2) the financing agreement was "a fully integrated document which does not include the arbitration clause contain in the separate Buyer's Order." She further argued that the arbitration provision did not contain a clear and unmistakable intent to delegate "gateway arbitrability questions" to an arbitrator and that the trial court (and not an arbitrator) must, therefore, decide whether Westlake had waived its right to arbitrate and could enforce the arbitration agreement. Neither party requested a hearing on the motion to compel arbitration. There is nothing in the record to indicate that either party filed an arbitration demand with the AAA or any other arbitrator or arbitration organization regarding their dispute.

**The Trial Court's Ruling**

{¶ 19} On December 12, 2022, the trial court denied Westlake Services' motion to compel arbitration. The trial court found that Westlake Services had waived any right to arbitration based on its "active engagement in litigation" for over 15 months, "act[ing] inconsistently with the alleged right to arbitrate [the parties']

dispute." The trial court further found that Westlake Services was not a party to the buyer's order and that the buyer's order did "not specifically reserve the right to arbitrate to its assignee." Finally, the trial court found "no clear or unmistakable delegation" in the arbitration agreement "co[n]signing * * * issues" of "whether a contract exists and whether Plaintiff has waived its ability to invoke arbitration" to an arbitrator. The trial court stated that the buyer's order did "not contain language that would delegate arbitrability to an arbitrator" and held that "[i]ncorporating AAA rules by reference is not persuasive of any such delegation."

{¶ 20} Westlake Services appealed, raising the following two assignments of error for review:

> First Assignment of Error
> The Trial Court erred when it considered the gateway questions of arbitrability raised by Defendant/Appellee Samantha Chandler despite her failure to specifically challenge the existence of an agreement to arbitrate or the validity of the delegation clause contained in the Arbitration Agreement.

> Second Assignment of Error
> The Trial Court erred when it disregarded the clear and unmistakable intent of the Arbitration Agreement to delegate to the arbitrator resolution of threshold questions of arbitrability, including whether Plaintiff/Appellant Westlake Services, LLC waived its right to arbitrate and whether it could enforce the Arbitration Agreement.

{¶ 21} Westlake Services' assignments of error overlap. Accordingly, we address them together.

**Law and Analysis**

{¶ 22} As an initial matter, we note that Westlake Services does not challenge the correctness of the trial court's determinations that (1) Westlake Services waived any right to arbitration due to its "active engagement in litigation" for over 15 months and (2) Westlake Services was not a party to the buyer's order and was not entitled to enforce its arbitration provision. Westlake Services contends only that, based on the language of the arbitration agreement, the trial court erred in deciding these issues for itself rather than ordering that they be decided by an arbitrator. Accordingly, it is only that limited issue we address here.

{¶ 23} Because this issue involves a matter of contract interpretation, it is subject to de novo review. *See, e.g., Little Aquanauts, L.L.C. v. Makovich & Pusti Architects, Inc.*, 8th Dist. Cuyahoga No. 109594, 2021-Ohio-942, ¶ 8 (stating that a de novo standard of review applies "when evaluating the scope of an arbitration agreement, that is, whether a party has agreed to submit a certain issue to arbitration"), citing *Seyfried v. O'Brien*, 2017-Ohio-286, 81 N.E.3d 961, ¶ 18 (8th Dist.).

{¶ 24} Both the Federal Arbitration Act ("FAA") and Ohio law require that courts enforce arbitration agreements according to their terms. 9 U.S.C. 2-4; R.C. 2711.01-2711.03; *see also Lamps Plus, Inc. v. Varela*, ____ U.S. ____, 139 S.Ct. 1407, 1412, 1415, 203 L.Ed.2d 636 (2019); *Reyna Capital Corp. v. McKinney Romeo Motors, Inc.*, 2d Dist. Montgomery No. 24538, 2011-Ohio-6806, ¶ 37-38. A party cannot be compelled to arbitrate a dispute it has not agreed to submit to arbitration.

*See, e.g., Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, 958 N.E.2d 1203, ¶ 20; *see also Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002) ("'[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'"), quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). The policy favoring arbitration makes "'"arbitration agreements as enforceable as other contracts, but not more so."'" *Brown v. Jc Austintown, Inc.*, 2023-Ohio-553, 209 N.E.3d 161, ¶ 19 (7th Dist.), quoting *Morgan v. Sundance, Inc.*, ___ U.S. ___, 142 S.Ct. 1708, 1713, 212 L.Ed.2d 753 (2022), quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), fn. 12.

{¶ 25} When asked to compel arbitration or to stay a case pending arbitration, it is generally a court that determines whether the parties agreed to arbitrate their dispute based on an examination of the language of the parties' agreement. *See, e.g., Smith v. Javitch Block LLC*, 2023-Ohio-607, 209 N.E.3d 869, ¶ 23 (8th Dist.) ("The question of whether a controversy is referable to arbitration under the provisions of a contract is a question for a court to decide upon examination of the contract."), citing *Gibbons-Grable Co. v. Gilbane Bldg. Co.*, 34 Ohio App.3d 170, 171, 517 N.E.2d 559 (8th Dist.1986).

{¶ 26} However, the parties can agree that an arbitrator, rather than a court, will decide "'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68-69, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010). An agreement to arbitrate a gateway question of arbitrability is an additional, antecedent agreement the party seeking arbitration asks the court to enforce. *Id.* at 68-70.

{¶ 27} Such an agreement — commonly referred to as a delegation clause or delegation provision — requires "'clear and unmistakable' evidence" that the parties agreed to have an arbitrator decide the arbitrability question or questions at issue. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, ___ U.S. ___, 139 S.Ct. 524, 530, 202 L.Ed.2d 480 (2019), quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U. S. 938, 943-944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). This is a high standard. *See, e.g., Payne v. Savannah Coll. of Art & Design, Inc.*, N.D. Ga. No. 1:20-CV-5000-JPB-JCF, 2021 U.S. Dist. LEXIS 257806, 37 (Nov. 4, 2021); *Armstrong v. Michaels Stores, Inc.*, N.D.Ca. No. 17-CV-06540-LHK, 2018 U.S. Dist. LEXIS 208976, 24 (Dec. 11, 2018); *see also First Options* at 945 ("[G]iven the principle that a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration, one can understand why courts might hesitate to interpret silence or ambiguity on the 'who should decide arbitrability' point as giving the arbitrators that power, for doing so might too often force unwilling parties to arbitrate a matter they reasonably would have thought a judge, not an arbitrator, would decide.").

{¶ 28} When parties to a contract have clearly and unmistakably vested the arbitrator with the authority to decide questions of arbitrability, such questions are to be decided by the arbitrator, consistent with the parties' agreement. *AT&T*

*Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986); *see also Schein* at 530 ("Just as a court may not decide a merits question that the parties have delegated to an arbitrator, a court may not decide an arbitrability question that the parties have delegated to an arbitrator."); *Little Aquanauts*, 2021-Ohio-942, at ¶ 19 ("""Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."""), quoting *Pappas v. Richmond Towers L.L.C.*, 8th Dist. Cuyahoga No. 94558, 2011-Ohio-5249, ¶ 14, quoting *Belmont Cty. Sheriff v. FOP, Ohio Labor Council, Inc.*, 104 Ohio St.3d 568, 2004-Ohio-7106, 820 N.E.2d 918, ¶ 13. A valid delegation clause precludes courts from resolving threshold arbitrability disputes within the scope of the delegation clause, even those that appear "wholly groundless." *Schein* at 529-531.

{¶ 29} However, a right to arbitrate a dispute may be waived like any other contractual right. *Midland Funding LLC v. Schwarzmer*, 8th Dist. Cuyahoga No. 111357, 2022-Ohio-4506, ¶ 18, citing *Blue Technologies Smart Solutions, L.L.C. v. Ohio Collaborative Learning Solutions, Inc.*, 8th Dist. Cuyahoga No. 108535, 2020-Ohio-806, ¶ 13. R.C. 2711.02(B) provides that a court shall stay an action pending arbitration only if "the applicant for the stay is not in default in proceeding with arbitration." *See also* 9 U.S.C. 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to

arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."). "'To establish waiver, the party seeking waiver must demonstrate (1) that the party knew of its right to assert an argument or defense and (2) that the totality of the circumstances establish that the party acted inconsistently with that right.'" *Midland Funding* at ¶ 18, quoting *Gembarski v. PartsSource, Inc.*, 157 Ohio St.3d 255, 2019-Ohio-3231, 134 N.E.3d 1175, ¶ 25.

{¶ 30} In its first assignment of error, Westlake Services argues that (1) the trial court erred in determining that the arbitration agreement did not delegate "threshold questions of arbitrability" to an arbitrator and (2) the trial court "had no authority" to consider the validity of the arbitration agreement's purported "delegation clause" because Chandler did not "specifically challenge" the enforceability of the "delegation clause" below.[2] In its second assignment of error, Westlake Services contends that whether Westlake Services could enforce the

---

[2] Westlake Services' argument that Chandler failed to "specifically challenge" the validity of the "delegation clause" presupposes the existence of a delegation clause in the arbitration agreement that extends to the matters at issue. Because we find, for the reasons set forth below, that the arbitration agreement did not contain a delegation clause evidencing a clear and unmistakable intent to delegate the issue of waiver by litigation conduct to an arbitrator, we need not address that argument here. Likewise, because we conclude it was for the trial court to decide whether Westlake Servies waived its right (if any) to arbitration based on its litigation conduct and because Westlake Services does not challenge the merits of the trial court's finding that Westlake Services waived any right to arbitrate, we need not address whether it was for the trial court or an arbitrator to decide if Westlake Services would have otherwise had a right to enforce the arbitration agreement as a nonsignatory to the buyer's order.

arbitration agreement in the buyer's order as a nonsignatory assignee of Clerac and whether Westlake Services waived its right (if any) to enforce the arbitration agreement were among the "gateway arbitrability questions" that had been delegated to the arbitrator under the arbitration agreement's "delegation clause" and that the trial court committed reversible error in deciding those issues itself rather than ordering that they be decided by an arbitrator.

{¶ 31} Chandler responds that (1) waiver by litigation conduct is not "an issue of 'arbitrability'" that could be properly delegated to an arbitrator, (2) the reference to AAA rules in the arbitration agreement — i.e., the alleged "delegation clause for this arbitration agreement" — did not require that the questions of "litigation conduct waiver" be "sent to an arbitrator" and (3) in any event, the existence of a "delegation clause" was "not a relevant or necessary consideration" for the trial court's "analysis and finding" of Westlake Services' "waiver by litigation conduct of the right to arbitrate" because there was no arbitration agreement between Chandler and Westlake Services. Chandler argues that because Clerac assigned only the financing agreement to Westlake — and not the buyer's order — any rights Westlake Services has "emanate from the [financing agreement] alone," which "does not include the right to arbitrate."

{¶ 32} There is no express "delegation clause" in the arbitration agreement. There is nothing in the arbitration agreement that expressly states that the parties agree to arbitrate questions related to arbitrability, the interpretation of the arbitration agreement, the validity, enforceability or scope of the arbitration

agreement or any waiver of the right to arbitrate. Westlake Services acknowledges this fact but contends that such "threshold questions of arbitrability" should have, nevertheless, been delegated to an arbitrator based on the parties' "incorporation by reference" of AAA rules in the arbitration agreement.

{¶ 33} Westlake Services argues that, based on the agreement's reference to "AAA rules," the arbitration agreement necessarily incorporated Rule 14 of the AAA's Consumer Arbitration Rules ("Rule 14") into the parties' agreement. It contends that "Rule 14 makes clear that the arbitrator has the full power to rule upon his or her jurisdiction, including issues involving the existence, scope, or validity of the arbitration agreement" and that, under the AAA rules, "all questions of arbitrability that might impact an arbitrator's jurisdiction are delegated to the arbitrator to decide," including "the question of waiver."

{¶ 34} Here, the parties to the buyer's order agreed, upon the election of either party, to arbitrate any "dispute" — defined as "any controversy or claim by or between us [Clerac] (including our officers, directors, employees, affiliates or representatives) and you [Chandler] of any kind or nature whatsoever (including any controversy or claim relating to or arising out of our financing of your purchase of the Vehicle, if applicable)" — "in accordance with the Federal Arbitration Act and the rules of the American Arbitration Association ('AAA') or any other national or regional arbitration organization [Chandler] select[s] that is acceptable to [Clerac]."

{¶ 35} Even assuming the issue of waiver by litigation conduct could be properly delegated to an arbitrator, we agree with the trial court that the arbitration

agreement in this case does not contain "clear and unmistakable" evidence that the parties intended an arbitrator to decide any issues of waiver by litigation conduct. Accordingly, the trial court did not err in deciding that issue itself.

{¶ 36} First, there is no guarantee that AAA rules would even apply to an arbitration conducted under the arbitration agreement in this case. Although the arbitration agreement references AAA rules, indicating that they are "available online at www.adr.org, or by calling at 1-800-773-7879," the arbitration agreement provides that a dispute could be arbitrated in accordance with AAA rules or the rules of "any other national or regional arbitration organization you select that is acceptable to us." No further explanation is provided in the agreement as to what other national or regional arbitration organizations might be "acceptable to [Clerac]." In each of the cases relied upon by Westlake Services for its argument that "incorporation of the AAA Rules into an arbitration agreement provides 'clear and unmistakable evidence' that the parties agreed to arbitrate threshold questions of arbitrability," the arbitration agreement specifically provided that the arbitration would be conducted in accordance with those rules (or other specifically identified rules giving arbitrators the authority to determine their own jurisdiction). *See, e.g., Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir.) (arbitration agreement specified that arbitration would be conducted according to the AAA National Rules for the Resolution of Employment Disputes); *Cooper v. WestEnd Capital Mgmt., LLC*, 832 F.3d 534, 546 (5th Cir.2016) (express incorporation of JAMS rules in arbitration agreement); *Oracle Am., Inc. v. Myriad*

*Group A.G.*, 724 F.3d 1069, 1069-1071 (9th Cir.2013) (express incorporation of the United Nations Commission on International Trade Law arbitration rules into arbitration provision in a commercial contract). None of those cases involved a situation where, as here, the AAA was simply one of several possible arbitration venues — the others of which were not specifically identified in the arbitration agreement — the parties might select for arbitration.

{¶ 37} In *Little Aquanauts*, 2021-Ohio-942, this court considered whether an arbitration agreement between two commercial parties that provided that "[a]ny disputes * * * must be submitted to binding arbitration before a JAMS arbitrator" constituted a clear and unmistakable intent that any issue of arbitrability would be decided by an arbitrator. *Id.* at ¶ 3, 19-20. The appellee argued that because the parties had agreed that disputes would be "submitted * * * before a JAMS arbitrator" and JAMS' rules state that questions of arbitrability shall be determined by the arbitrator, the parties had agreed to have an arbitrator determine the issue of arbitrability. *Id.* at ¶ 20. This court disagreed and stated that "[a]ny agreement for arbitrability to be decided by the arbitrator rather than the court must be spelled out in the arbitration clause itself." *Id.*, citing *Pappas*, 2011-Ohio-5249, at ¶ 16. The court held that because the arbitration provision was "silent as to jurisdiction," "the parties did not unmistakably provide that the issue of arbitrability was to be determined by the arbitrator" and "[t]he issue was therefore properly determined by the court." *Little Aquanauts* at ¶ 20.

{¶ 38} Further, even if the arbitration agreement were deemed to incorporate AAA rules, incorporation of those rules would not constitute a clear and unmistakable delegation of the issue of waiver by litigation conduct to the arbitrator. Rule 14 provides, in relevant part:

> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.
>
> (b) The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

{¶ 39} The AAA rules make no mention of waiver by litigation conduct. The argument that a party has waived its right to arbitrate through its litigation conduct does not challenge the arbitrability of any particular claim or counterclaim, the "existence, scope or validity" of the arbitration agreement or the "existence or validity" of "a contract of which the arbitration clause forms a part." Rather, it is an argument that even if a valid arbitration agreement covers the parties' dispute, the party seeking to compel arbitration has waived its contractual right to enforce the agreement and compel arbitration through its participation in litigation. *See Banq, Inc. v. Purcell*, D.Nev. No.: 2:22-cv-00773-APG-VCF, 2023 U.S. Dist. LEXIS 7494 (Jan. 17, 2023), fn. 1.

{¶ 40} Accordingly, even if the arbitration agreement were deemed to have incorporated AAA rules and even if, by virtue of the incorporation of such rules,

issues of the arbitrability of particular claims and the existence, scope, or validity of the arbitration agreement were deemed to have been delegated to an arbitrator, this would not be sufficient to conclude that the parties here clearly and unmistakably intended that an arbitrator rather than a court should decide whether Westlake Services waived any right it might have to arbitrate the parties' dispute based on its litigation conduct.[3]  *See, e.g., Internatl. Energy Ventures Mgmt., L.L.C. v. United Energy Group., Ltd.*, 999 F.3d 257, 264-65 (5th Cir.2021) (observing that "[t]he fact that language in an arbitration agreement is broad enough to cover a particular issue does not mean the language is clear and unmistakable" and holding that because AAA rules "do not expressly give arbitrators the power to resolve questions of waiver through litigation," incorporation of those rules "cannot supply the clear and unmistakable agreement that is required" to give arbitrators the power to resolve those questions); *Plaintiff's Shareholders Corp. v. S. Farm Bur. Life Ins. Co.*, 486 Fed.Appx. 786, 789-790 (11th Cir.2012) (district court properly addressed waiver

---

[3] Chandler goes a step further and argues that the parties not only did not clearly and unmistakably delegate the issue of waiver by litigation conduct to an arbitrator but that they could not have done so.  We need not decide that issue here.  However, we do note that delegation of such an issue to an arbitrator could lead to considerable gamesmanship and delay.  Here, Westlake initiated the litigation and waited for more than 15 months, after fact discovery, expert report deadlines and dispositive motion deadlines had passed, before raising a right to arbitration and claiming that, pursuant to a "delegation clause" in the arbitration agreement, an arbitrator needed to decide whether Westlake Services had a right to enforce the arbitration agreement and/or had waived any right to arbitration through its litigation conduct.  It would not be hard to imagine a situation where a party waited until the eve of trial — or perhaps even the middle of trial — before raising a right to arbitration and claiming that the litigation needed to be stayed and the issue of waiver by litigation conduct referred to an arbitrator.  *See Lukis v. Whitepages Inc.*, 535 F.Supp.3d 775, 786 (N.D.Ill.2021).

based on litigation conduct; incorporation of AAA rules in arbitration agreement did not "constitute clear and unmistakable evidence of an agreement to arbitrate issues of conduct-based waiver"); *Born v. Progrexion Teleservices, Inc.*, D. Utah No. 2:20-cv-00107, 2020 U.S. Dist. LEXIS 145191, 19-21 (Aug. 11, 2020) ("Although the AAA Rules provide that the arbitrator shall rule on objections concerning the 'existence, scope or validity' of the Agreement, the AAA Rules do not vest the arbitrator with the power to rule on whether the right to arbitration can be waived by litigation conduct.  Whether [a party] has waived its right to arbitration through its litigation conduct is an inquiry separate and distinct from questions concerning the 'existence, scope or validity' of the Agreement."); *Money Mailer, LLC v. Brewer*, W.D.Wash. No. C15-1215RSL, 2016 U.S. Dist. LEXIS 47928, 8-9 (Apr. 8, 2016) ("Even in circuits that have concluded that incorporation of the AAA rules constitutes a clear and unmistakable agreement that the parties will arbitrate arbitrability, courts have properly addressed the question of waiver through litigation conduct despite incorporation of the AAA rules."); *DeVries v. Experian Info. Sols., Inc.*, N.D. Cal. No. 16-cv-02953-WHO, 2017 U.S. Dist. LEXIS 26471, 30-31 (Feb. 24, 2017) ("Incorporation of the AAA Rules * * * does not require that the issue of waiver [by litigation conduct] be decided by the arbitrator."); *PNC Bank, N.A. v. Presbyterian Ret. Corp.*, S.D.Ala. No. 14-0461-WS-B, 2015 U.S. Dist. LEXIS 55084, 14 (Apr. 28, 2015) (concluding that court, rather than arbitrator, would decide whether plaintiff had waived its right to compel arbitration through its litigation conduct, noting that a "AAA rule empowering the arbitrator to decide 'arbitrability of any claim' * * *

appears to refer to a different species of arbitrability, distinct from the specialized question of waiver [by litigation conduct]"); *Haddock v. Quinn*, 287 S.W.3d 158, 175 (Tex. App. Ft. Worth 2009) ("[A] general reference in the arbitration agreement to the AAA rules, without more, does not clearly and unmistakably manifest [the] parties' intent to refer the issue of waiver by litigation conduct to the arbitrator."); *see also Morgan Stanley & Co. LLC v. Couch*, 659 Fed.Appx. 402, 404-05 (9th Cir.2016) (arbitration agreement stating that "any dispute as to the arbitrability of a particular issue or claim pursuant to this arbitration provision is to be resolved in arbitration" did not clearly and unmistakably "encompass disputes over whether the clause remains valid in light of the parties' litigation conduct"); *Lukis*, 535 F.Supp.3d at 784-785 (whether defendant waived arbitration through litigation conduct or delay was "necessarily an issue for a court to decide" notwithstanding provision in arbitration agreement that stated "[t]he arbitrator will decide all threshold questions").[4]

---

[4] In support of its argument that "an issue of waiver is a question for an arbitrator to decide," Westlake Services repeatedly points to the United States Supreme Court's observation in *Howsam* that "the presumption is that the arbitrator should decide 'allegations of waiver, delay, or a like defense to arbitrability.'" 537 U.S. at 84, 123 S.Ct. 588, 154 L.Ed.2d 491, quoting *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). *Howsam* did not involve the interpretation or application of a "delegation clause" or which threshold questions parties may contractually delegate to an arbitrator or waiver based on litigation conduct. It stated that certain issues are presumptively for the arbitrator — even without a delegation provision in the arbitration agreement. In *Howsam*, the Court considered whether the court or an arbitrator should decide the applicability of a National Association of Securities Dealers arbitration time-limit rule, i.e., that no dispute was eligible for submission to arbitration "where six (6) years have elapsed from the occurrence or event giving rise to the * * * dispute." *Howsam* at 81. The Court held that the time-limit rule like other "'procedural' questions which grow out of the dispute and bear on its final disposition" fell "within the class of gateway procedural disputes that do not present * * *

**{¶ 41}** As the court explained in *Money Mailer*:

> This outcome is consistent with the reasons for courts, rather than arbitrators, to decide conduct-based waiver questions: leaving the issue to the decisionmaker with the expertise and power to control its docket and prevent abuse in its proceedings; avoiding the inefficiency of "sending waiver claims to the arbitrator * * * in cases in which the alleged waiver arises out of conduct within the very same litigation in which the party attempts to compel arbitration"; and preventing the arbitrator from "get[ting] first crack at defenses to a motion to compel arbitration based on waiver[,]" which would essentially require the court to compel arbitration without reviewing the parties' contentions.

*Money Mailer* at 9, quoting *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1121 (9th Cir.2008), fn. 5.

**{¶ 42}** Even assuming Westlake had a right to enforce the arbitration agreement and even assuming the issue of waiver by litigation conduct could be properly delegated to an arbitrator, because the parties did not clearly and unmistakably provide in the arbitration agreement that the issue of waiver by litigation conduct was to be delegated to an arbitrator, it was for the trial court to

---

'questions of arbitrability'" and was, therefore, "a matter presumptively for the arbitrator, not for the judge" to decide. *Id.* at 84-85. As other courts have observed, it is fairly clear, when considered in context, that the Supreme Court's reference to waiver in that case was as a defense "arising from non-compliance with contractual conditions precedent to arbitration" — the contractual doctrine of waiver not "claims of waiver based on active litigation in court" — and was not intended "to upset the 'traditional rule' that courts, not arbitrators, should decide the question of whether a party has waived its right to arbitrate by actively litigating the case in court." *See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 217-219 (3d Cir.2007); *Born*, 2020 U.S. Dist. LEXIS 145191, at 13-18, citing *Pre-Paid Legal Servs. v. Cahill*, 786 F.3d 1287, 1295 (10th Cir.2015); *Lukis*, 535 F.Supp.3d at 786-787. *But see Natl. Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 328 F.3d 462, 466 (8th Cir.2003) (concluding that whether plaintiff waived its right to arbitrate by pursuing litigation in Oklahoma courts in other cases on reinsurance contracts to which defendant was a party was to be presented to arbitration panel in pending arbitration, citing *Howsam*).

decide whether Westlake Services waived its right to arbitration based on its litigation conduct in this case in which Westlake Services filed its motion to compel arbitration. Accordingly, we overrule Westlake Services' assignments of error.

{¶ 43} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

MICHELLE J. SHEEHAN, J., CONCURS;
KATHLEEN ANN KEOUGH, P.J., CONCURS IN JUDGMENT ONLY