[Cite as *Martin v. ManorCare Health Servs., L.L.C.*, 2024-Ohio-2250.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| RAYMOND J. MARTIN | C.A. No. 30866 |
| Appellant | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| MANORCARE HEALTH SERVICES, LLC, et al. | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO CASE No. CV-2022-07-2308 |
| Appellees | |

DECISION AND JOURNAL ENTRY

Dated: June 12, 2024

SUTTON, Judge.

**{¶1}** Plaintiff-Appellant, Raymond J. Martin, the personal representative of the Estate of Nancy C. Martin, appeals from the judgment of the Summit County Court of Common Pleas. This Court reverses.

I.

**Relevant Background**

**{¶2}** This appeal arises from a survivorship claim for medical negligence filed by Mr. Martin, as the personal representative of Mrs. Martin's Estate, against Defendants-Appellees, ManorCare Health Services, LLC, dba ProMedica Skilled Nursing and Rehabilitation, fka Heartland of Twinsburg (the "nursing home"), Martin Allen, and John Does 1-10. The complaint alleged Appellees were negligent in treating and caring for Mrs. Martin at a skilled nursing facility in Twinsburg, Ohio, nka ProMedica Skilled Nursing and Rehabilitation, owned and/or operated by

Appellees. The complaint also alleged a wrongful death claim which the parties agree is not bound by the arbitration agreement.

{¶3} Mrs. Martin, 85 years-of-age, was transferred directly from Cleveland Clinic Akron General to the nursing home. Prior to her admission, the nursing home, through an unknown individual, provided Mrs. Martin with a series of documents to sign, including what was titled a "Voluntary Arbitration Agreement." The nursing home failed to disclose to Mr. Martin the identity of the employee who purportedly assisted Mrs. Martin in completing the admission documents and who signed the arbitration agreement on behalf of the nursing home. Further, it is impossible to decipher the person's identity from their signature on the 2021 arbitration agreement. Mr. Martin, who was with Mrs. Martin during her admission to the nursing home, attested he was not aware an arbitration agreement was included in the series of documents Mrs. Martin was asked to sign and no one discussed arbitration with Mrs. Martin prior to her signing the agreement.[1]

{¶4} Appellees filed a motion to stay proceedings for binding arbitration, wherein they attached the arbitration agreement signed by Mrs. Martin, and Mr. Martin opposed the motion. After allowing the parties to fully brief the issues, the trial court granted Appellees' motion to stay proceedings to allow for binding arbitration of Mr. Martin's medical negligence claim. In so doing, the trial court concluded:

> While this [c]ourt is of the opinion that arbitration agreements like the one at issue herein are suspect in terms of fairness, it cannot find that they are illegal or unenforceable for that reason alone. Ohio law, with great clarity, favors arbitration and other forms of alternate dispute resolution. Thus, courts have been instructed to resolve all doubts in favor of arbitration. * * * The [c]ourt has reviewed the [a]greement and has determined that it is substantively conscionable and otherwise valid in the eyes of the law. Therefore, it must be enforced. Defendant[s'] motion to stay proceedings pending arbitration pursuant to R.C. 2711.02 is hereby granted. The entirety of this matter shall be stayed pending arbitration.

---

[1] Mrs. Martin was admitted to the nursing home both in 2017 and 2021. The 2021 arbitration agreement alone is relevant to this appeal.

(Emphasis omitted.)

**{¶5}** Mr. Martin now appeals, raising one assignment of error for our review.

II.

**ASSIGNMENT OF ERROR**

**THE TRIAL COURT ERRED WHEN IT GRANTED [APPELLEES'] MOTION TO STAY THIS CASE AND FORCE IT TO INVOLUNTARY, BINDING ARBITRATION.**

**{¶6}** In his sole assignment of error, Mr. Martin argues the trial court erred in granting Appellees' motion to stay this matter pending binding arbitration. Specifically, Mr. Martin argues: (1) the arbitration agreement is procedurally and substantively unconscionable; (2) the arbitration agreement terminated at the time Mrs. Martin left the facility due to the merger clause; (3) the arbitration agreement does not include all named parties; and (4) the arbitration agreement violated R.C. 2711.23(C), (G), and (H) and/or 42 C.F.R. § 483.70. We focus our analysis on Mr. Martin's unconscionability argument as it is dispositive of this appeal.

**{¶7}** Generally, we review a trial court's disposition of a motion to stay trial pending arbitration under an abuse of discretion standard. *Porpora v. Gatliff Bldg. Co*., 9th Dist. Medina No. 04CA0051-M, 2005-Ohio-2410, ¶ 5. However, the unconscionability of a contract and its provisions is purely a question of law. *Featherstone v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 9th Dist. Wayne No. 04CA0037, 2004-Ohio-5953, ¶ 12; *Eagle v. Fred Martin Motor Co*., 9th Dist. Summit No. 21522, 2004-Ohio-829, ¶ 13. Therefore, we review the trial court's determination of unconscionability de novo. *Featherstone* at ¶ 12, citing *Eagle* at ¶ 13. Additionally, "[a] determination of unconscionability is a fact-sensitive question that requires a case-by-case review of the surrounding circumstances." *Featherstone* at ¶ 12, citing *Eagle* at ¶ 13.

**Unconscionability**

{¶8}     "Unconscionability includes both 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.'" *Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 2009-Ohio-2054, ¶ 20, quoting *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 383 (1993). "The party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Hayes* at ¶ 20.

{¶9}     "Procedural unconscionability concerns the formation of the agreement and occurs when no voluntary meeting of the minds is possible." *Porpora* at ¶ 7. "In order to determine whether a contract provision is procedurally unconscionable, courts consider the relative bargaining positions of the parties, whether the terms of the provision were explained to the weaker party, and whether the party claiming that the provision is unconscionable was represented by counsel at the time the contract was executed." *Id*., citing *Eagle* at ¶ 31. *See Eagle* at ¶ 31 ("With respect to procedural unconscionability, a court will consider factors bearing on the relative bargaining position of the contracting parties, including age, education, intelligence, business acumen, experience in similar transactions, whether the terms were explained to the weaker party, and who drafted the contract.").

{¶10}   Further, when "there are strong indications that the contract at issue is an adhesion contract, and the arbitration clause itself appears to be adhesive in nature there is considerable doubt that any true agreement ever existed to submit disputes to arbitration." *Porpora* at ¶ 7, quoting *Williams v. Aetna Fin. Co*., 83 Ohio St.3d 464, 473 (1998). The Supreme Court of Ohio, in *Hayes*, explained:

> Additional factors that may contribute to a finding of procedural unconscionability include the following: "'belief by the stronger party that there is no reasonable

probability that the weaker party will fully perform the contract; knowledge of the stronger party that the weaker party will be unable to receive substantial benefits from the contract; knowledge of the stronger party that the weaker party is unable reasonably to protect his interests by reason of physical or mental infirmities, ignorance, illiteracy or inability to understand the language of the agreement, or similar factors.'"

*Id.* at ¶ 24, quoting *Taylor Bldg. Corp. of Am. v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 44, quoting Restatement of the Law 2d, Contracts, Section 208, Comment d (1981). "All of the factors must be examined and weighed in their totality in determining whether an arbitration agreement is procedurally unconscionable." *Hayes* at ¶ 30. "*These findings must be considered __in tandem__ with the analysis on substantive unconscionability.*" (Emphasis added.) *Id.*

{¶11} "Substantive unconscionability refers to the actual terms of the agreement." *Porpora* at ¶ 8. "Contract terms are unconscionable if they are unfair and commercially unreasonable." *Id.*, citing *Bank One, N.A. v. Borovitz*, 9th Dist. Summit No. 21042, 2002-Ohio-5544, ¶ 16. In *Hayes*, the Supreme Court of Ohio stated:

> An assessment of whether a contract is substantively unconscionable involves consideration of the terms of the agreement and whether they are commercially reasonable. *John R. Davis Trust 8/12/05 v. Beggs*, 10th Dist. Franklin No. 08AP-432, 2008-Ohio-6311, ¶ 13; *Dorsey v. Contemporary Obstetrics & Gynecology, Inc.*, 113 Ohio App.3d 75, 80 (1996). Factors courts have considered in evaluating whether a contract is substantively unconscionable include the fairness of the terms, the charge for the service rendered, the standard in the industry, and the ability to accurately predict the extent of future liability. *John R. Davis Trust* at ¶ 13; *Collins v. Click Camera,* 86 Ohio App.3d 826, 834 (1993). *No bright-line set of factors for determining substantive unconscionability has been adopted by this court. The factors to be considered vary with the content of the agreement at issue.*

(Emphasis added.) *Id*. at ¶ 33. "A party challenging an arbitration agreement must prove a quantum of both procedural and substantive unconscionability." *Id*. at ¶ 30, citing *Taylor Bldg. Corp. of Am.* at ¶ 34.

{¶12} In *Wascovich v. Personacare*, 190 Ohio App.3d 619, 2010-Ohio-4563 (11th Dist.), the Eleventh District Court of Appeals considered a situation similar to the one before this Court

and determined the arbitration agreement, in that case, to be unconscionable. Mr. Wascovich, age 73, was admitted to a nursing home where he fell twice and fractured his right hip. *Id*. at ¶ 2. Ultimately, Mr. Wascovich succumbed to his injuries. *Id*. Mr. Wascovich's son filed a complaint against the nursing home alleging it was responsible for his father's death. *Id*. at ¶ 3. The nursing home moved to stay the proceedings based upon an arbitration agreement signed by Mr. Wascovich at the time he was admitted to the nursing home. *Id*. at ¶ 4. Mr. Wascovich's son opposed the motion for stay, arguing procedural and substantive unconscionability. *Id*. Although the trial court determined the arbitration agreement was procedurally unconscionable, it indicated it was bound by *Hayes*, *supra*, and, therefore, could not find the arbitration agreement to be substantively unconscionable. *Id*. at ¶ 12-14. The *Wascovich* Court, in concluding the arbitration agreement is both procedurally and substantively unconscionable, reversed the trial court's decision upholding the arbitration agreement. *Id*. at ¶ 54.

{¶13} As to procedural unconscionability, the *Wascovich* Court reasoned:

In *Manley v. Personacare of Ohio*, 11th Dist. Lake No. 2005-L-174, 2007-Ohio-343, ¶ 21-22, this court found that an arbitration agreement signed during the admissions process was procedurally unconscionable. As in the instant case, the appellant in *Manley* was transferred directly from the hospital to the nursing home. Similarly, the appellant in *Manley* did not have a friend or family member accompany her during the admissions process.

Further, according to the affidavit of appellant, [Mr.] Wascovich did not have any prior legal experience or expertise, and [Mr.] Wascovich did not have an attorney present at the time of admission. *Id*. at ¶ 23.

[Mr.] Wascovich's cognitive abilities must also be taken into consideration. Appellant averred that [Mr.] Wascovich, upon being admitted into the nursing home, had been diagnosed with Alzheimer's disease. As the trial court observed, however, appellant failed to produce any evidence as to [Mr.] Wascovich's actual level of cognitive impairment. Therefore, we agree with the trial court that this factor "weigh[ed] only minimally in favor of finding the [arbitration agreement] procedurally unconscionable."

While the affidavit of [Ms.] Hendrickson supplied by appellee contains numerous accounts of what she would have done in a typical admission, there is no information from any source that would indicate that [Mr.] Wascovich expressed both an understanding and willingness to sign the arbitration agreement. A brief comparison of the multiple signatures obtained on that date reflects, at the very least, some physical impairment with the ability to sign. Under these circumstances, there should be some testimony or evidence that [Mr.] Wascovich had the mental capacity to enter into a contract of any kind, let alone one that [Ms.] Hendrickson herself did not comprehend.

Appellant has also put forth evidence that the arbitration agreement is adhesive in nature. The affidavit of [Ms.] Hendrickson maintains that the agreement was drafted by Kindred Corporation, the healthcare services company of which Personacare is a subsidiary. [Ms.] Hendrickson further averred that she did not inform [Mr.] Wascovich that he could make changes to the arbitration agreement and that no resident has ever made changes to the agreement.

An adhesion contract is a "'standard-form contract prepared by one party, to be signed by the party in a weaker position, usu[ally] a consumer, who adheres to the contract with little choice about the terms.'" [*Taylor Bldg. Corp. of Am.* at ¶ 21, quoting Black's Law Dictionary 342 (8th Ed.2004) .] Despite the strong public policy in favor of arbitration, a weaker presumption arises when an arbitration clause is found in a contract of adhesion. *Sikes v. Ganley Pontiac Honda, Inc.*, 8th Dist. Cuyahoga No. 82889, 2004-Ohio-155, ¶ 15. Although an adhesion contract is not per se unconscionable, "the more standardized the agreement and the less a party may bargain meaningfully, the more susceptible the contract or a term will be to a claim of unconscionability." *O'Donoghue v. Smythe, Cramer Co.*, 8th Dist. Cuyahoga No. 80453, 2002-Ohio-3447, ¶ 24. Nonetheless, "it is incumbent upon the complaining party to put forth evidence demonstrating that the clause is adhesive and, moreover, that as a result of the adhesive nature, the clause is unconscionable." *Sikes* at ¶ 15.

Based on the factors presented, we conclude that [Mr.] Wascovich's bargaining power was substantially outweighed by the bargaining power of Personacare. Consequently, the arbitration agreement at issue was procedurally unconscionable[.] * * *

*Id.* at ¶ 36-42.

{¶14} Here, like *Wascovich*, Mr. Martin asserts the arbitration agreement is procedurally unconscionable. In so doing, Mr. Martin contends: (1) the nursing home held all of the bargaining power; (2) Mrs. Martin was going through the "highly stressful and emotional process of admitting herself into a nursing home[;]" (3) the nursing home is a sophisticated corporation; (4) Mr. and Mrs.

Martin had no experience with arbitration agreements, and no one from the nursing home explained what arbitration is or was; (5) the nursing home drafted the arbitration agreement; (6) Mrs. Martin had no legal experience or business acumen; (7) the nursing home did not produce the name of the individual that performed Mrs. Martin's intake or signed the arbitration agreement on the nursing home's behalf; and (8) the nursing home violated federal law by failing to explain arbitration to Mrs. Martin.

{¶15} As previously indicated, at the time of her admission, the nursing home provided Mrs. Martin with a series of documents to sign, including an arbitration agreement. Mrs. Martin was also provided a document titled "Introduction to Our Voluntary Arbitration Program[.]" This document stated, in part:

> In the unlikely event that we are unable to resolve your concerns to your satisfaction, this Center offers a voluntary arbitration program for resolving disagreements. Here are a few highlights of the program:
>
> Arbitration is a process for resolving disputes using a neutral person, called an "arbitrator," instead of litigation before a judge or jury.
>
> Each party has an equal say in choosing who will arbitrate the case. Experienced lawyers or retired judges are typically selected.
>
> The United States Supreme Court has recognized that arbitration is usually faster and more efficient than courthouse litigation.
>
> Arbitration is less formal than ligation and will usually take place in a conference room rather than a courtroom.
>
> The arbitration proceedings and records are confidential, meaning that members of the public have no access to personal medical information.
>
> Either side may be represented by an attorney of their own choosing or may elect not to use a lawyer at all.
>
> By agreeing to arbitrate, both sides forego the right to have a judge or jury decide any dispute.

The Arbitration Agreement does not need to be signed in order for the Patient to be admitted to the Center or to continue to receive care at the Center.

The Arbitration Agreement may be revoked in writing by certified mail at any time within thirty days after signing. Revocation will not affect the care the Patient receives.

Please read the attached Arbitration Agreement, and if you agree, please sign where indicated.

(Emphasis removed.)

{¶16} According to Mr. Martin's affidavit attached to his opposition to Appellees' motion to stay, Mrs. Martin was asked to sign a "large quantity of documents all at the same time[]" during the admission process in 2021. Mr. Martin averred "no one explained to us what arbitration was[,]" and "[n]o one explained to us the difference between arbitration and litigation." Mr. Martin also averred his attorney later explained to him that an arbitration agreement was included with the admission paperwork, but no one from the nursing home ever spoke with him or Mrs. Martin about the arbitration agreement. Additionally, Mr. Martin averred:

* * *

We never acknowledged to anyone that we understood anything about arbitration[;]

No one from the [nursing home] ever asked my wife or me to acknowledge that we understood any arbitration agreement[;]

No one from the [nursing home] ever told us that if something happened to my wife, if she was neglected at the nursing home, and she was injured as a result, that we would not be able to sue the nursing home[;]

No one ever explained to [us] that my wife had a right to have any dispute with the nursing home determined in court[;]

* * *

My wife had no experience or training at all with contracts[;] [and]

[My wife] had no experience or training with law or legal issues.

{¶17} In his sur reply brief in opposition to Appellees' motion to stay, Mr. Martin provided excerpts from Mrs. Martin's medical history at the time of her admission to the nursing home in 2021. Although Appellees moved to strike Mr. Martin's sur reply, the trial court denied Appellees' motion. As such, even though these excerpts are not supported by an affidavit, they remain in the record. A review of the medical record excerpts reveals Mrs. Martin suffered from some level of cognitive decline at the time she was admitted to the nursing home. Further, Mrs. Martin misspelled her own name on two of the admission documents.

{¶18} Similar to facts and arguments set forth in *Wascovich*, *supra*, Mrs. Martin, an elderly, infirm woman, was transferred directly from the hospital to the nursing home. At the time of her admission to the nursing home, she had some level of cognitive decline, which is evidenced both by the excerpts from her medical records and her misspelled signature on two admission documents. Mrs. Martin did not have any legal experience or training in contracts, and did not have an attorney with her at the time she signed the arbitration agreement. Mr. Martin averred no one spoke with him or Mrs. Martin about the arbitration agreement during the admission process. Further, there is no information from any source in the record that Mrs. Martin understood she was signing an arbitration agreement that would eliminate her right to a jury trial should a legal issue arise. Also, because the nursing home did not disclose the name of the individual who signed the 2021 arbitration agreement, who also presented Mrs. Martin with the admission documents, there is no testimony or evidence in the record that Mrs. Martin had the mental capacity to enter into any contract, including the arbitration agreement. *See generally Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, ¶ 16, quoting *Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976) and *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991) ("Essential elements of a contract include an offer, acceptance, contractual

capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration." "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract.").

{¶19} Further, Mrs. Martin was provided a standard-form contract, an arbitration agreement, drafted by the nursing home. Mrs. Martin, the weaker party, did not make any changes to the terms of the arbitration agreement, and the nursing home did not engage Mrs. Martin in any type of meaningful negotiations regarding the same. There is no evidence Mrs. Martin even knew she was able to negotiate with the nursing home or make changes to the arbitration agreement. According to Mr. Martin's affidavit, which is the only evidence as to what was discussed when Mrs. Martin signed the arbitration agreement, the nursing home failed to explain *anything* regarding arbitration to Mrs. Martin prior to having her sign the agreement. Instead, the nursing home provided Mrs. Martin with a generalized, one-sided document, that it created, promoting arbitration by expressing only positive factors about arbitration without disclosing any potential negative implications of arbitration, including, but not limited to, those relating to waiving her right to a jury trial, limiting her rights on appeal on the merits of the arbitration decision, and any delay associated with a stay on the wrongful death claims.

{¶20} Based upon the foregoing, we conclude Mrs. Martin's bargaining power, relating to the arbitration agreement, was substantially outweighed by that of the nursing home. The arbitration agreement was a standard-form contract drafted by the nursing home and was presented to Mrs. Martin upon her direct transfer from the hospital. Mrs. Martin made no changes to the arbitration agreement and did not negotiate any of its terms. Mrs. Martin, the weaker party suffering from some level of cognitive decline, was also not represented by counsel at the time she signed the arbitration agreement. The nursing home failed to explain the arbitration agreement and the

arbitration process in general prior to obtaining Mrs. Martin's signature. Thus, we conclude the arbitration agreement is procedurally unconscionable. We must now turn to whether the arbitration agreement is substantively unconscionable.

{¶21} Turning back to *Wascovich*, the Eleventh District Court of Appeals also found the arbitration agreement substantively unconscionable. The *Wascovich* Court reasoned:

> Appellant states that the arbitration agreement is substantively unconscionable because (1) a person is not informed of the advantages of litigation, i.e., the benefits of a jury, the discovery process, and the award, if successful, (2) the agreement promotes arbitration, and (3) it requires a plaintiff to pay high fees for the filing of a claim and the hourly rate for each arbitrator.
>
> While there are some factors that weigh against a finding of substantive unconscionability, those factors are outweighed by the factors supporting unconscionability. We first address those factors that weigh against substantive unconscionability.
>
> First, the arbitration agreement at issue was optional and was a separate, stand-alone agreement. At the top of the agreement, in bold, capitalized letters, it states: "ALTERNATIVE DISPUTE RESOLUTION AGREEMENT BETWEEN RESIDENT AND FACILITY (OPTIONAL)." "[T]he fact that this statement was written in bold type in the arbitration agreement, which was a separate agreement, strongly suggests that admission to the facility was not contingent upon signing the arbitration agreement." [*Manley* at ¶ 37.]
>
> Second, the arbitration agreement contained a section entitled "Understanding of the Resident" in boldface. The following section was identical to that contained in *Manley*, stating:
>
> "Understanding of the Resident. By signing this agreement, the Resident is acknowledging that he/she understands the following: (1) he/she has the right to seek legal counsel concerning this Agreement; (2) the execution of this Agreement is not a precondition of admission or to the furnishing of services to the Resident by Facility, and the decision of whether to sign the Agreement is solely a matter for the Resident's determination without any influence; (3) this Agreement may not even be submitted to Resident when Resident's condition prevents him/her from making a rational decision whether to agree; (4) nothing in this Agreement shall prevent Resident or any other person from reporting alleged violations of law to the Facility, or the appropriate administrative, regulatory or law enforcement agency; (5) the ADR process adopted by this Agreement contains provisions for both mediation and binding arbitration, and if the parties are unable to reach settlement informally, or through mediation, the dispute shall proceed to binding arbitration;

and (6) agreeing to the ADR process in this agreement means that the parties are waiving their right to a trial in court, including their right to a jury trial, their right to a trial by judge, and their right to appeal the decision of the arbitrator(s) in a court of law."

The arbitration agreement also contained clauses relating to the discovery process and the costs associated with alternative dispute resolution. For example, the agreement provides that Personacare "shall pay the mediator's and arbitrator(s)' fees and other reasonable costs (excluding the Resident's attorney's fees) associated with the mediation and/or arbitration up to a maximum of five days of the arbitration hearing." If this process lasts longer than five days, the costs would be split between the parties. "These provisions did not have a deterrent effect on a resident's decision to bring a claim against Personacare." *Manley* at ¶ 40.

The arbitration clause also allowed for revocation by the resident within 30 days of signing the agreement. In *Manley*, we stated, "The ability to reject the arbitration clause at a later time also weighs in favor of upholding the arbitration agreement. The resident was given an opportunity to think about his or her decision and, if unhappy with the agreement, the opportunity to reject the agreement. This 30–day period also provided the resident with an opportunity to discuss the matter with a family member or an attorney." *Id.* at ¶ 39.

There are factors that weigh in favor of finding substantive unconscionability. First, the almost total lack of procedural protections weighs heavily against Personacare. For example, there is nothing in the record to indicate that [Mr.] Wascovich appeared lucid and cognizant on the date he signed his admission documents. There are only assertions about what the admissions process normally includes. [Mr.] Wascovich may have indicated no understanding regarding what he was signing. *The burden is on Personacare to produce something that reflects that they were dealing with a person who, at a minimum, had the capacity to contract. Lacking such information in the record, any substantive deficiency would be fatal.*

*The main problem with affirming the substantive aspect of the agreement, however, is that under the facts of this case, the normal factors favoring arbitration do not apply.* This is because there is no economy or efficiency achieved. In fact, the contrary is true, because a party may be forced to participate in two proceedings, instead of one. Rather than achieve cost savings, there would be a substantial increase in costs. The potential exists for an increase in the number of depositions and hearings, duplicate discovery, and expert testimony and expense in two forums. The addition of these factors outweighs the factors that weigh in favor of substantive conscionability.

Most importantly, enforcement of the agreement in this case may result in inconsistent decisions on the issue of liability—something that should be avoided in every case.

*Id*. at ¶ 36-52.

**{¶22}** Here, like *Wascovich*, Mr. Martin asserts the arbitration agreement is substantively unconscionable. In so doing, Mr. Martin contends: (1) the arbitration agreement is a contract of adhesion; (2) the arbitration agreement failed to comply with R.C. 2711.33; and (3) the nursing home failed to disclose any negative aspects of arbitration, such as additional costs to the nursing home resident and issues with discovery.

**{¶23}** The arbitration agreement, in this matter, states in pertinent part:

> The parties agree that they will mutually benefit from the speedy and efficient resolution of any dispute or controversy which may arise between them. This is a voluntary [a]greement to have all disputes resolved through binding arbitration by an independent neutral [a]rbitrator who will be selected by the parties as specified in this [a]greement. **THE PARTIES AGREE THAT THEY ARE WAIVING THE RIGHT TO TRIAL BY JURY. ANY DISPUTES BETWEEN THE PARTIES WILL BE RESOLVED EXCLUSIVELY THROUGH BINDING ARBITRATION**.
>
> * * *
>
> **Signing this [a]greement is not required in order for the [p]atient to be admitted into the [c]enter or to continue to receive care at the [c]enter. The same level of care will be provided whether or not the [a]greement is signed. The [p]atient may discuss this [a]greement with his or her attorney before signing.**
>
> * * *

(Emphasis in original.) Additionally, the arbitration agreement allowed for cancellation within 30 days of signing, either by writing cancelled on the face of the agreement and sending it by certified mail, return receipt requested, to the nursing home, or filing a medical claim in court within the 30 days allotted for cancellation. The arbitration agreement further indicated that by signing, an individual acknowledged the arbitration agreement had been explained to them and they understood it.

{¶24}    Similar to *Wascovich*, *supra*, this record contains no evidence Mrs. Martin had the capacity to bind herself to the arbitration agreement on the date in question or that a nursing home employee explained the arbitration agreement to Mrs. Martin in a manner she understood.  The nursing home did not produce any evidence Mrs. Martin, at a minimum, had the capacity to contract.  *Id.* at ¶ 50.  Instead, the only evidence in the record directly indicates no one explained the arbitration agreement to Mrs. Martin prior to her signing it and Mrs. Martin suffered from some level of cognitive decline at the time she was admitted to the nursing home.  As such, "any substantive deficiency [in the arbitration agreement] would be fatal."  (Emphasis omitted.)  *Id.*

{¶25}    The record also reveals the arbitration agreement did not comply with R.C. 2711.23(C).  R.C. 2711.23 states, in relevant part:

> To be valid and enforceable any arbitration agreements pursuant to sections 2711.01 and 2711.22 of the Revised Code for controversies involving a medical, dental, chiropractic, or optometric claim that is entered into prior to a patient receiving any care, diagnosis, or treatment shall include or be subject to the following conditions:
>
> * * *
>
> (C) The agreement shall provide that the decision whether or not to sign the agreement is solely a matter for the patient's determination without any influence[.]
>
> * * *

In accordance with the Restatement of Contracts:

> (1) Undue influence is unfair persuasion of a party who is under the domination of the person exercising the persuasion or who by virtue of the relation between them is justified in assuming that that person will not act in a manner inconsistent with his welfare.

Restatement of the Law 2d, Contracts, Section 177 (1981).  The comment to this section provides additional discussion regarding unfair persuasion, stating:

> *b. Unfair persuasion.*  * * *  The degree of persuasion that is unfair depends on a variety of circumstances.  The ultimate question is whether the result was produced

by means that seriously impaired the free and competent exercise of judgment. Such factors as the unfairness of the resulting bargain, the unavailability of independent advice, and the susceptibility of the person persuaded are circumstances to be taken into account in determining whether there was unfair persuasion, but they are not in themselves controlling.

Restatement of the Law 2d, Contracts, Section 177, Comment b. (1981)

{¶26} Here, it is undisputed the arbitration agreement does not state that signing is "solely a matter for the patient's determination without any influence[.]" R.C. 2711.23(C). Although the arbitration agreement indicates it is "voluntary," and that being admitted to the nursing home is not contingent upon signing the arbitration agreement, influence, whether direct or indirect, can certainly impact a person's ability to make a voluntary decision. As discussed above, an unknown nursing home employee, whose name has not been disclosed by the nursing home to Mr. Martin, provided Mrs. Martin, an infirm woman suffering from some level of cognitive decline, a series of admission documents to sign. These documents included both the arbitration agreement and the pro-arbitration document titled "Introduction to Our Voluntary Arbitration Program[.]" Combined, these documents created a one-sided, overly positive, and generic view of the arbitration process. Mr. Martin attested there was no verbal discussion about arbitration and its potential impact on Mrs. Martin, and the nursing home has not submitted any contrary evidence. As such, in spite of the use of the word "voluntary" in the arbitration agreement itself, there is no evidence in the record Mrs. Martin signed the arbitration agreement of her own volition without any influence from the nursing home.

{¶27} Additionally, under the facts of this case, similar to *Wascovich*, 2010-Ohio-4563, at ¶ 51, "the normal factors favoring arbitration do not apply." Mr. Martin filed both survivorship and wrongful death claims on behalf of Mrs. Martin and her estate. The parties agree the wrongful death claim is not covered under the arbitration agreement and will be litigated in the trial court.

Thus, "[t]he potential exists for an increase in the number of depositions and hearings, duplicate discovery, and expert testimony and expense in two forums." *Id.* "Most importantly, enforcement of the [arbitration] agreement in this case may result in inconsistent decisions on the issue of liability-something that should be avoided in every case." *Id.* at ¶ 52. Indeed, "[i]t does not comport with logic or reason to substantively require an inefficient and potentially inconsistent path from here." *Id.* at ¶ 53.

{¶28} Based upon this record, and for the reasons stated above, we conclude the arbitration agreement in this matter is substantively unconscionable. Because Mr. Martin proved a quantum of both procedural and substantive unconscionability, the arbitration agreement is not enforceable and the litigation stay must be lifted. *See Taylor Bldg. Corp. of Am.*, 117 Ohio St.3d 352, 2008-Ohio-938, at ¶ 34.

{¶29} Accordingly, Mr. Martin's assignment of error is sustained.

### III.

{¶30} Mr. Martin's sole assignment of error is sustained. The judgment of the Summit County Court of Common Pleas is reversed and this matter is remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellees.

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
CONCURS.

HENSAL, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶31}    I agree that the trial court erred by concluding that the arbitration agreement is not substantively unconscionable. The remedy for that error, however, is to remand this matter so that the trial court can consider procedural unconscionability in the first instance.

{¶32}    Because unconscionability "includes both 'an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party[,]'" a party who asserts that an arbitration agreement is unconscionable must demonstrate both substantive and procedural unconscionability. *Hayes v. Oakridge Home*, 122 Ohio St.3d 63, 2009-Ohio-2054, ¶ 20, quoting *Lake Ridge Academy v. Carney*, 66 Ohio St.3d 376, 383 (1993). Both are necessary to determine that an arbitration agreement is unconscionable, but they are

distinct concepts. Substantive unconscionability focuses on the terms of the agreement and whether they are commercially reasonable, but procedural unconscionability focuses on the circumstances that surrounded the parties' bargaining relationship. *Hayes* at ¶ 23, 33. When a court determines that one is not present, it does not need to consider the other. *Okolish v. Town Money Saver, Inc.*, 9th Dist. Summit No. 30261, 2023-Ohio-2865, ¶ 12.

**{¶33}** That is what the trial court did in this case: having concluded that the terms of the arbitration agreement were not substantively unconscionable, the trial court did not consider whether the circumstances surrounding the agreement demonstrated procedural unconscionability. The issue raised in this appeal is whether the trial court erred by granting a stay pending arbitration based on its conclusion that the arbitration agreement is not substantively unconscionable. This Court is a reviewing court. *See* Ohio Constitution, Article IV, Section 3(B)(2). The task before us is not to determine whether the arbitration agreement is unconscionable. Instead, this Court's responsibility is to consider whether the trial court erred in reaching the conclusion that the agreement is not substantively unconscionable. In doing so, we apply a de novo standard of review, but we must review the trial court's factual determinations "with great deference." *Taylor Bldg. Corp. of America v. Benfield*, 117 Ohio St.3d 352, 2008-Ohio-938, ¶ 38. The trial court said nothing about procedural unconscionability, and neither should we. The appropriate remedy is for this Court to reverse the trial court's decision on substantive unconscionability and remand this matter to the trial court to consider procedural unconscionability in the first instance.

**{¶34}** I concur in the majority judgment only to the extent that it concludes that the trial court erred by determining that the arbitration agreement was not substantively unconscionable. I disagree with the majority's analysis to the extent that it blends the concepts of substantive and procedural unconscionability and fails to afford deference to the trial court's factual determinations.

I cannot concur with the majority's decision to address procedural unconscionability when the trial court has not done so in the first instance. Consequently, I must dissent from the rest of the majority's opinion.

APPEARANCES:

BLAKE A. DICKSON, Attorney at Law, for Appellant.

J. RANDALL ENGWERT, Attorney at Law, for Appellees.

THOMAS A. PRISLIPSKY, Attorney at Law, for Appellees.