RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0154p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JESSICA HINES, individually and on behalf of all others
similarly situated,

 *Plaintiff-Appellee,*

 *v.*

NATIONAL ENTERTAINMENT GROUP, LLC,

 *Defendant-Appellant.*

> No. 24-3725

---

Appeal from the United States District Court for the Southern District of Ohio at Columbus.
No. 2:23-cv-02952—Algenon L. Marbley, District Judge.

Decided and Filed:  June 9, 2025

Before:  SUTTON, Chief Judge; GIBBONS and WHITE, Circuit Judges.

---

**COUNSEL**

**ON BRIEF:**  Damion M. Clifford, Stefanie L. Coe, Damien Kitte, ARNOLD CLIFFORD LLP, Columbus, Ohio, for Appellant.  Daniel J. Canon, Jonathan C. Little, SAEED AND LITTLE, LLP, Indianapolis, Indiana, for Appellee.

---

**OPINION**

---

 JULIA  SMITH  GIBBONS,  Circuit Judge.   This case centers on whether Plaintiff-Appellee Jessica Hines is bound by an arbitration provision included in contracts she signed on three different occasions between October 2020 and June 2023.  In September 2023, Hines sued Defendant-Appellant National Entertainment Group, LLC ("NEG"), an adult entertainment club in Columbus, Ohio, for failing to properly compensate its employees under the Fair Labor

Standards Act of 1938, 29 U.S.C. § 201 *et seq.*; the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.01 *et seq.*; the Ohio Semi-Monthly Payment Act, Ohio Rev. Code § 4113.15; Ohio Rev. Code § 2307.60; and common law unjust enrichment.

NEG moved to dismiss Hines's suit or, in the alternative, to stay the proceedings pending completion of arbitration that the parties contractually agreed to in their Lease Agreement Waiver (the "Lease Waiver"). Although Hines does not dispute that she signed three separate agreements to arbitrate, she argues that the agreements are unenforceable because they are both procedurally and substantively unconscionable. Agreeing with Hines, the district court denied NEG's motion to dismiss and declined to enforce the parties' agreement to arbitrate. We vacate the district court's denial of NEG's motion to stay pending the completion of arbitration and remand for further proceedings consistent with this opinion.

I.

Hines alleges that she worked as a dancer for National Entertainment Group, LLC ("NEG"), an adult entertainment club in Columbus, Ohio, from approximately February 2014 to August 2023. Although NEG denies that Hines worked at NEG after September 2017, both parties agree that Hines signed three separate and identical Lease Agreement Waivers ( "Lease Waivers") on October 28, 2020; January 8, 2022; and June 6, 2023.[1] Each Lease Waiver is a single-page document containing two paragraphs with text written in roughly 11 point font. The second paragraph is an arbitration provision and begins with the heading in all capital letters: "MANDATORY ARBITRATION AND CLASS/COLLECTIVE ACTION WAIVER." DE 4-1, October 2020 Lease Waiver, Page ID 40; DE 4-2, January 2022 Lease Waiver, Page ID 42; DE 4-3, June 2023 Lease Waiver, Page ID 44. The Lease Waiver's arbitration provision states in relevant part:

> Any and all disputes or claims that arise out of this Agreement, a breach of this
> Agreement, or out of the relationship between me and National Entertainment

---

[1]The text of each Lease Waiver is identical, but the title of the most recent June 6, 2023 Lease Waiver is different. The Lease Waivers that Hines signed on October 28, 2020 and January 8, 2022 are both titled "Lease Agreement Waiver." DE 4-1, October 2020 Lease Waiver, Page ID 40; DE 4-2, January 2022 Lease Waiver, Page ID 42. The June 6, 2023 Lease Waiver is titled, "Vanity Gentlemen's Club Lease Agreement Waiver." DE 4-3, June 2023 Lease Waiver, Page ID 44.

Group, LLC (including any wage claim, any claim based upon promises or duties NEG made or owed to me, any claim based upon promises or duties I made or owed to NEG, as well as any claim for money, compensation, tips and/or fees, any claim for wrongful termination, or any claim based upon any statute, regulation, or law, including those dealing with wages and hours, overtime, discrimination, sexual harassment, civil rights, age, gender, sexual preference, or disabilities, as well as any tort claims) shall be resolved by arbitration in accordance with the then effective arbitration rules of the American Arbitration Association ("AAA"), and judgment upon the award rendered pursuant to such arbitration shall be final and binding and may be entered in any court having jurisdiction. . . . I understand that by agreeing to the mandatory arbitration set forth herein, I waive my right to a jury trial and to proceed with any claim against NEG in a court of law.

DE 4-1, October 2020 Lease Waiver, Page ID 40; DE 4-2, January 2022 Lease Waiver, Page ID 42; DE 4-3, June 2023 Lease Waiver, Page ID 44. Hines signed each Lease Waiver on a signature line that appeared immediately after this arbitration provision.

In September 2023, Hines sued NEG on her own behalf and on behalf of all putative class action members, bringing claims under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*; the Ohio Minimum Fair Wage Standards Act, Ohio Rev. Code § 4111.01 *et seq.*; the Ohio Semi-Monthly Payment Act, Ohio Rev. Code § 4113.15; Ohio Rev. Code § 2307.60; and a common law unjust enrichment theory, arguing that NEG failed to maintain employment records and properly compensate its employees. NEG moved to dismiss the action because, according to NEG, (i) Hines lacked standing to bring her claims given that NEG had no record of employing Hines after August 2017, and (ii) even if Hines had standing, the case should be stayed pending the completion of arbitration given that Hines had agreed to arbitrate any and all disputes with NEG when she signed the Lease Waivers in October 2020, January 2022, and June 2023. The district court denied NEG's motion to dismiss, concluding that Hines had plausibly alleged sufficient facts to support standing, and that NEG's affidavit attesting that Hines had not worked at NEG at any time since September 2017 was irrelevant on a motion to dismiss.

In determining whether to grant NEG's motion to stay proceedings pending arbitration, the court applied the four-factor test set out in *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000), in which courts ask (i) whether the parties agreed to arbitrate; (ii) whether the claims fall within the scope of that agreement; (iii) whether Congress intended the federal claims to be

arbitrable, and (iv) whether to stay the case pending arbitration if the court concludes that some, but not all, of the claims in the action are subject to arbitration. Applying *Stout*, the district court denied NEG's motion to stay the case pending arbitration, concluding that the Lease Waiver's arbitration provision was both procedurally and substantively unconscionable, and thus there was no agreement to arbitrate under the first *Stout* factor. The district court did not address the remaining three *Stout* factors. NEG appeals the district court's denial of its motion to stay the case pending the completion of arbitration.

## II.

Under the Federal Arbitration Act (the "FAA"), arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. When a party brings a lawsuit raising a claim subject to arbitration, the FAA provides for a stay of proceedings, 9 U.S.C. § 3, and for orders compelling arbitration when a party refuses to comply with an arbitration agreement, 9 U.S.C. § 4. But, before a court can compel arbitration, the court must first determine whether a valid agreement to arbitrate exists. *In re StockX Customer Data Sec. Breach Litig.*, 19 F.4th 873, 879 (6th Cir. 2021). If there is a valid agreement to arbitrate, "an arbitration provision is severable from the remainder of the contract" and other challenges to the contract's validity "[are] considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006).

Arbitration agreements are "on an equal footing with other contracts" and may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation and quotation marks omitted). In determining whether an agreement to arbitrate is unconscionable, we apply state contract law. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). An unconscionable arbitration agreement is unenforceable. *See Morrison v. Cir. City Stores, Inc.*, 317 F.3d 646, 666 (6th Cir.2003) (applying the unconscionability doctrine in the context of an arbitration agreement).

Under Ohio law, "[t]he party asserting unconscionability of a contract bears the burden of proving that the agreement is both procedurally and substantively unconscionable." *Hayes v. Oakridge Home*, 908 N.E.2d 408, 412 (Ohio 2009). We review the district court's denial of a motion to stay pending the completion of arbitration de novo. *Southard v. Newcomb Oil Co.*, 7 F.4th 451, 454 (6th Cir. 2021). While we are mindful of the strong federal policy in favor of arbitration, *see Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625–26 (1985), the "presumption" favoring arbitration applies only to the scope of arbitration and does not override the principle that "arbitration is a matter of contract between the parties" subject to state law governing contract formation, *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (citation and quotation marks omitted); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 303 (2010) (stating that courts are prohibited from using "policy considerations as a substitute for party agreement").

### III.

### A.

*Procedural unconscionability.* Procedural unconscionability "concerns the formation of the agreement, and occurs when one party has such superior bargaining power that the other party lacks a 'meaningful choice' to enter into the contract." *Thomas v. Hyundai*, 154 N.E.3d 701, 709 (Ohio Ct. App. 2020) (citation omitted). The party asserting the agreement's unconscionability must demonstrate that the individualized circumstances surrounding the contract were so unfair that there was "no voluntary meeting of the minds." *Schaefer v. Jim Brown, Inc.*, 33 N.E.3d 96, 100 (Ohio Ct. App. 2015) (citation and quotation marks omitted). Ohio courts look to the following factors to assess the relative bargaining power of the parties: "age, education, intelligence, business acumen, and experience in similar transactions—whether the terms were explained to the weaker party, and who drafted the contract." *Robinson v. Mayfield Auto Grp., LLC*, 100 N.E.3d 978, 985 (Ohio Ct. App. 2017). Hines argues that the arbitration clause is procedurally unconscionable because she received neither an oral explanation of the Lease Waiver's terms nor an opportunity to review the Lease Waiver due to an imbalance in bargaining power arising from her lack of business experience and her being

"nearly naked" and "about to start work, which she had paid for," when she was asked to sign the Lease Waiver. Neither argument is persuasive.

*First*, under Ohio law, there is no strict requirement that an arbitration clause must be explained orally to a party when the arbitration clause at issue is not written in fine print and is not otherwise hidden from the party. *ABM Farms, Inc. v. Woods*, 692 N.E.2d 574, 578 (Ohio 1998). Here, the Lease Waiver's arbitration clause was not written in fine print. The arbitration clause appears conspicuously in the Lease Waiver; the heading of the arbitration clause appears in all capital letters, "MANDATORY ARBITRATION AND CLASS/COLLECTIVE ACTION WAIVER." DE 4-3, Lease Waiver, Page ID 44. The text of the arbitration clause itself appears in the same size print as the rest of the Lease Waiver. The text of the arbitration clause also covers at least half of the entire single-page Lease Waiver.

NEG did not hide the meaning of the arbitration clause with abstruse legal terms. Instead, the clause plainly states, "[a]ny and all disputes or claims that arise out of this Agreement, a breach of this Agreement, or out of the relationship between me and [NEG] . . . shall be resolved by arbitration." DE 4-3, Lease Waiver, Page ID 44. The last sentence immediately before the signature line of the Lease Waiver states, "I understand that by agreeing to the mandatory arbitration set forth herein, I waive my right to a jury trial and to proceed with any claim against NEG in a court of law." *Id.* Under Ohio law, a contracting party is "presumed to know the reasonable import of the contents of a signed agreement, including the existence and scope of an arbitration clause." *Ball v. Ohio State Home Servs., Inc.*, 861 N.E.2d 553, 557 (Ohio Ct. App. 2006) (citation and quotation marks omitted). Although this presumption does not apply if a party lacks contractual capacity, *see KeyBank, N.A. v. David*, 2024-Ohio-5333, ¶ 26 (Ohio Ct. App. 2024), Hines does not claim she lacked contractual capacity, nor does she allege facts that could plausibly support such a conclusion. Therefore, any argument that the clause is unconscionable because Hines could not understand its meaning is unpersuasive. *Wallace v. Ganley Auto Grp.*, 2011-Ohio-2909, ¶ 32 (Ohio Ct. App. 2011) (rejecting argument that an arbitration provision was unconscionable due to the signatories' lack of comprehension when the terms of the arbitration clause were clearly written).

*Second*, Hines asserts that she lacked an opportunity to read the Lease Waiver when she signed the same Lease Waivers—with identical arbitration provisions—in January 2022 and June 2023. According to Hines, because she had already "spent significant time applying makeup," was "nearly naked," and had already paid the fee to work before being presented with the January 2022 and June 2023 Lease Waivers, DE 14-1, Hines Decl., Page ID 83–84, she was placed in a weaker bargaining position and was rushed to sign the Lease Waivers on both occasions. Even if we put aside the fact that Hines had signed the first Lease Waiver in October 2020, which could independently bind Hines to arbitration for claims arising out of that agreement or "the relationship between [her] and [NEG]," DE 4-1, October 2020 Lease Waiver, Page ID 40, Hines's argument concerning the procedural unconscionability of the January 2022 and June 2023 Lease Waivers does not persuade.

Ohio courts have rejected bare allegations that one party lacked the opportunity to review an arbitration clause as grounds for declining to enforce it. For example, in *Conte v. Blossom Homes, L.L.C.*, an Ohio court found that a homeowner was unable to establish procedural unconscionability even though the homeowner stated that he felt rushed to sign the arbitration agreement. 63 N.E.3d 1245, 1251 (Ohio Ct. App. 2016). Crucial to the court's holding was that there was no indication that the drafter of the contract refused to address questions regarding its provisions or that the homeowner was denied the opportunity to seek third-party advice before signing. *Id.* Consistent with *Conte*, Hines's allegations that she felt rushed to sign an arbitration agreement, without more, do not render the Lease Waiver's arbitration clause procedurally unconscionable. *Cf. Dacres v. Setjo, L.L.C.*, 140 N.E.3d 1041, 1049 (Ohio Ct. App. 2019) (rejecting employee's procedural unconscionability claim based economic duress because "Ohio employers may condition employment on the agreement of an employee to arbitrate disputes"). Hines's failure to review the Lease Waiver before signing it does not negate her intent to be bound by it. *W.K. v. Farrell*, 853 N.E.2d 728, 733 (Ohio Ct. App. 2006).

Although Hines argues that she was placed in a weaker bargaining position, "[m]ere inequality of bargaining power is insufficient to invalidate an otherwise enforceable arbitration agreement." *Vanyo v. Clear Channel Worldwide*, 808 N.E.2d 482, 487 (Ohio Ct. App. 2004). Hines must allege facts that plausibly support a conclusion that, as a consequence of the

imbalance of bargaining power, she was coerced into agreement to the arbitration clause.  *See Ahmmad v. Ahmed*, 38 N.E.3d 434, 445 (Ohio Ct. App. 2015).  But the district court did not find that NEG coerced Hines into signing the Lease Waiver due to an imbalance in bargaining power. Nor could it.

Hines does not allege that NEG refused to offer Hines additional time to review the contract provisions or seek legal assistance—much less that it misrepresented the terms of the Lease Waiver or coerced her into signing the Lease Waiver through other means.  The lack of allegations supporting a claim of coercion in Hines's own pleadings forecloses her argument that the arbitration clause is procedurally unconscionable.  *Id.*  Even if the Lease Waiver was presented to Hines in a "pre-printed, standardized form, on a take-it-or-leave-it basis," she remained free to walk away from the contract, including its mandatory arbitration provision.[2] *Dimidik v. Hallrich Inc.*, No. 3:21-CV-306, 2022 WL 4273404, at *5 (S.D. Ohio Sept. 15, 2022) (citing *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 500 (6th Cir. 2004)).

The fundamental flaw in Hines's claim of procedural unconscionability lies in that fact that Hines, by her own admission, did not read the Lease Waiver before signing it.  Under Ohio law, "[a] person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed." *ABM Farms, Inc.*, 692 N.E.2d at 579 (citation omitted).  Hines is not exempt from this rule.

Hines relies on *Martin v. ManorCare Health Services, LLC*, 246 N.E.3d 598 (Ohio Ct. App. 2024) and *Wascovich v. Personacare of Ohio*, 943 N.E.2d 1030 (Ohio Ct. App. 2010), in support of her argument that the arbitration clause is procedurally unconscionable.  But she fails to mention the key fact that both cases involved elderly, cognitively impaired nursing home residents.  In *Martin*, a nursing home asked an 85 year old woman who had just been transferred

---

[2]The risk of Hines losing out on earnings after having paid a fee to work at NEG's club is not the kind of serious economic threat contemplated in *Blodgett* that leaves one with "no reasonable alternative," *Blodgett v. Blodgett*, 551 N.E.2d 1249, 1251 (1990) (citation and quotation marks omitted), because, in similar circumstances, Ohio courts have held that an employer's threats to withhold earned wages are "not so extreme" as to deprive an employee of meaningful choice, *see, e.g.*, *Dacres v. Setjo, L.L.C.*, 140 N.E.3d 1041, 1045–46, 1051 (Ohio Ct. App. 2019).  Therefore, based on the alleged facts, Hines cannot avoid the Lease Waiver's arbitration provision on a theory of economic duress.

from a hospital to sign a series of documents, including an arbitration agreement, prior to her admission. 246 N.E.3d at 601. Medical records indicated that the woman suffered from "some level of cognitive decline" and had "misspelled her own name on two of the admission documents." *Id.* at 606. The court concluded that the arbitration clause was procedurally unconscionable after noting, among other indicia of procedural unconscionability, that "there [was] no testimony or evidence in the record that [the woman] had the mental capacity to enter into any contract, including the arbitration agreement." *Id.* at 606.

In *Wascovich*, a 72 year old patient with Alzheimer's disease had signed an arbitration agreement immediately after being transferred from a hospital and before admission into a nursing home. 943 N.E.2d at 1036. The court held that the man lacked meaningful choice when he had signed an arbitration agreement. *Id.* at 1038. Crucial to the court's holding was the fact that "there [was] no information from any source that would indicate that [the man] expressed both an understanding and willingness to sign the arbitration agreement," especially in light of his diagnosis with Alzheimer's disease. *Id.* at 1037. Like in *Martin*, the court's finding of procedural unconscionability centered on whether the signer possessed "the mental capacity to enter into a contract." *Id.* *Martin* and *Wascovich* both addressed the particular "concerns associated with predispute arbitration agreements in the nursing-home arena" and the "delicate nature of the nursing-home admission process." *Id.* at 1034.

Because this case does not involve an individual who lacked the capacity to contract, both *Martin* and *Wascovich* are inapposite. There is nothing in Hines's pleadings to indicate that she suffered from advanced age or infirmity, or that she otherwise lacked the capacity to contract. In the absence of some showing that Hines lacked the capacity to contract (which she does not claim), Hines, who was a 28 year old adult at the time of signing the most recent June 2023 Lease Waiver, cannot escape "[t]he legal and common-sensical axiom that one must read what one signs." *ABM Farms, Inc.*, 692 N.E.2d at 579; *see also Preferred Cap., Inc. v. Power Eng'g Grp., Inc.*, 860 N.E.2d 741, 745 (Ohio 2007) ("[P]arties to contracts are presumed to have read and understood them and . . . a signatory is bound by a contract that he or she willingly signed.").

Based on the forgoing reasons, we conclude that Hines has not met her burden of establishing that the arbitration agreement was procedurally unconscionable. Hines had reasonable opportunity to understand the plain terms of the arbitration clause, which were not hidden in a "maze of fine print." *Hedeen v. Autos Direct Online, Inc.*, 19 N.E.3d 957, 967 (Ohio Ct. App. 2014) (citation omitted). The Lease Waiver's arbitration clause is not procedurally unconscionable, and Hines's argument that the Lease Waiver's arbitration clause is unconscionable fails on this basis alone. *See Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 24 (Ohio 2008).

B.

*Substantive unconscionability.* Although we need not address Hines's substantive unconscionability argument because we have concluded that the arbitration agreement was not procedurally unconscionable, *Hedeen*, 19 N.E.3d at 965, the parties' agreement to arbitrate is not substantively unconscionable, either. Substantive unconscionability concerns whether the terms of the agreement are fair or commercially reasonable. *Hayes*, 908 N.E.2d at 414. A contractual term is substantively unconscionable when it is "so one-sided as to oppress or unfairly surprise" a party. *Thomas*, 154 N.E.3d at 709 (citation and quotation marks omitted).

As a preliminary matter, the district court did not consider the arbitration clause itself in its substantive unconscionability analysis. The district court's substantive unconscionability analysis was limited to consideration of (i) a provision in the separate Club Activity Waiver, and (ii) a provision of the Lease Waiver that falls outside of the relevant arbitration clause. But in deciding whether an agreement to arbitrate is enforceable, courts may not consider arguments concerning the validity of the contract as a whole; instead, courts may only consider "issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967); *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) ("[D]istrict courts may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole[.]"). Therefore, the district court erred in holding that the Lease Waiver's arbitration clause is substantively unconscionable based only on its conclusions concerning the separate Club Activity Waiver and an unrelated provision contained in the Lease Waiver. In evaluating the

alleged substantive unconscionability of the parties' agreement to arbitrate, we may only analyze the terms of the arbitration clause itself. *See id.* Under the severability principle, separate arguments unrelated to the arbitration clause itself are "considered by the arbitrator in the first instance." *Buckeye Check Cashing*, 546 U.S. at 446.

Hines disagrees. Hines cites the Supreme Court's decision in *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), which makes clear that courts evaluate challenges to arbitration agreements alongside challenges to the overall contract when "a challenge applies 'equally' to the whole contract." CA6 R. 26, Appellee Br., at 10 (citing *Coinbase*, 602 U.S. at 151). But, Hines misapplies *Coinbase* because her argument that the Lease Waiver's arbitration provision is substantively unconscionable does not in fact "appl[y] 'equally' to the whole contract." *Coinbase*, 602 U.S. at 151.

In *Coinbase*, users of a cryptocurrency exchange platform, known as Coinbase, brought a putative class action against the platform, alleging that a promotional sweepstakes that the users had entered violated California laws. 602 U.S. at 146–47. To trade on the platform, the Coinbase users had first agreed to a user agreement that included an arbitration provision requiring the parties to arbitrate disputes arising out of the agreement, including disputes about arbitrability. *Id.* at 146. To participate in the promotional sweepstakes that Coinbase later offered, the users agreed to a second contract that contained a forum selection clause, under which users agreed to submit to the jurisdiction of California courts in the event of a dispute arising out of the sweepstakes. *Id.* at 146–47. The users argued that the second sweepstakes contract superseded the first contract containing the mandatory arbitration provision; thus, the users' class action was properly submitted to California courts. *Id.* at 149–50. Like this case, the threshold issue was whether there was an enforceable agreement to arbitrate. *Id.* at 150. But the similarities end there.

In *Coinbase*, the issue of whether there was a valid agreement to arbitrate necessarily depended on whether the second sweepstakes contract superseded the first contract, including its arbitration provision. *Id.* ("[T]he question whether these parties agreed to arbitrate arbitrability can be answered only by determining which contract applies."). The Court held that "where . . . parties have agreed to two contracts—one sending arbitrability disputes to arbitration,

and the other either explicitly or implicitly sending arbitrability disputes to the courts—a court must decide which contract governs." *Id.* at 152. Here, although Hines may have agreed to two separate contracts—the Lease Waiver and the Club Activity Waiver—neither NEG nor Hines have alleged that one contract supersedes the other.

> Hines's reliance on *Coinbase* is misplaced. Hines points to the following passage:

> The severability principle establishes that a party seeking to avoid arbitration must directly challenge the arbitration or delegation clause, not just the contract as a whole. But this rule does not require that a party challenge only the arbitration or delegation provision. Rather, *where a challenge applies "equally" to the whole contract and to an arbitration or delegation provision, a court must address that challenge*.

602 U.S. at 150–51 (emphasis added) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010)). But Hines's argument that the Lease Waiver's arbitration provision is substantively unconscionable does not "appl[y] 'equally' to the whole contract," *id.* at 151, because her challenges to other provisions based on substantive unconscionability are severable, *see Rent-A-Ctr.*, 561 U.S. at 70 ("[A] party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate."). In *Rent-A-Center*, the Court held that "[i]f a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court *must* consider the challenge before ordering compliance with that [arbitration] agreement" but, in the absence of a challenge to the agreement to arbitrate specifically, arguments related to "the validity of the Agreement as a whole" are "for the arbitrator." 561 U.S. at 71–72 (emphasis added). Consistent with *Rent-A-Center* and *Coinbase*, Hines's claims regarding the alleged substantive unconscionability of unrelated provisions in the same Lease Waiver do not prevent the district court from enforcing the Lease Waiver's arbitration provision.[3] Thus, on remand, if the district court ultimately determines that the

---

[3]Hines also relies on *Cleveland v. Power Home Solar, LLC*, 245 N.E.3d 413 (Ohio Ct. App. 2024) in support of her argument that courts may consider arguments concerning the alleged substantive unconscionability of distinct parts of a contract in determining whether a specific agreement to arbitrate is substantively unconscionable. But, in *Cleveland*, the court considered the overall circumstances of a contract only in the context of the plaintiff's claim of *procedural* unconscionability—its analysis of substantive unconscionability only addressed the provisions of the arbitration clause itself. *See* 245 N.E.3d at 423–25. We have already considered the overall circumstances surrounding the formation of the Lease Waiver in the context of Hines's argument that the Lease Waiver is procedurally unconscionable. *See supra* Section III(A).

remainder of the *Stout* factors are met, Hines's separate challenges to the validity of the Lease Waiver and Club Activity Waiver are severable and "must go to the arbitrator." *Buckeye Check Cashing*, 546 U.S. at 449; *Great Earth Cos.*, 288 F.3d at 890 ("Once the district court determines that a valid agreement to arbitrate exists, challenges to other distinct parts of the contract are to be resolved by the arbitrator.").

Next, Hines argues that the arbitration clause—considered alone—is substantively unconscionable because it is not supported by consideration. But state and federal courts have consistently held that a "mutuality of promises" is sufficient consideration to bind both parties to a contract. *See, e.g.*, *Sevier Cnty. Schs. Fed. Credit Union v. Branch Banking & Tr. Co.*, 990 F.3d 470, 476 (6th Cir. 2021) (applying Tennessee law); *Robinson*, 100 N.E.3d at 984. Evaluating the validity of the arbitration clause itself, the Lease Waiver's arbitration provision states, "[a]ny and all disputes or claims that arise out of [the] Agreement, a breach of [the] Agreement, or out of the relationship between [Hines] and National Entertainment Group, LLC . . . shall be resolved by arbitration." DE 4-3, Lease Waiver, Page ID 44. Because the Arbitration Agreement binds both Hines and NEG and applies to any claims that either party may assert against the other, this agreement to arbitrate contained in the Lease Waiver is supported by adequate consideration. Therefore, the parties' agreement to arbitrate is not substantively unconscionable for lack of consideration.

Relying on *Fazio v. Lehman Brothers, Inc.*, 340 F.3d 386 (6th Cir. 2003), Hines maintains that the underlying contract must be supported by consideration for an arbitration clause to be enforceable. Hines misstates our holding in *Fazio*. Nowhere in *Fazio* did we suggest that an arbitration clause is unenforceable if the contract as a whole lacks consideration. *See* 340 F.3d at 396–97 (noting only that Ohio courts have held that "mutuality is not a requirement of a valid arbitration clause if the underlying contract is supported by consideration"). Instead, we held that an arbitration clause remained enforceable despite self-help provisions that allowed a stock brokerage firm to unilaterally resolve certain disputes arising from a stockbroker's alleged breach of an account agreement. *Fazio*, 340 F.3d at 397. We reasoned that, although "the self-help provisions give the brokerage house an upper hand," there remained a sufficient mutuality of obligations to enforce the arbitration agreement, given

that the clients continued to "have as much a right to force arbitration as the brokerage [firm]." *Id.* Like the brokerage clients in *Fazio*, Hines has as much a right to force arbitration as NEG under the Lease Waiver's arbitration provision, which requires the arbitration of "all disputes or claims that arise out of this Agreement, a breach of this Agreement, or out of the relationship between [Hines] and National Entertainment Group, LLC." In addition, the Lease Waiver does not confer to NEG any similar self-help provisions that would give it the "upper hand" or otherwise allow it to avoid submitting disputes to arbitration. Therefore, *Fazio* only reaffirms our conclusion that the Lease Waiver's arbitration clause, considered in isolation, is supported by adequate consideration based on a "mutuality of promises" to arbitrate.

Finally, Hines also argues that the arbitration agreement itself is unconscionable because enforcement of the agreement could result in inconsistent decisions regarding liability. Under Ohio law, "any inconvenience or potential inconsistency caused by separate actions is not a legitimate basis for overriding an otherwise enforceable [arbitration] agreement." *Harrison v. Winchester Place Nursing*, 996 N.E.2d 1001, 1008 (Ohio Ct. App. 2013). Therefore, any related concerns Hines might have regarding judicial economy cannot override an otherwise enforceable arbitration agreement either. *Id.*

IV.

The Lease Waiver's arbitration provision is neither procedurally nor substantively unconscionable. Because the district court erred in determining that the parties' arbitration clause is unconscionable, we vacate the district court's denial of NEG's motion to stay pending the completion of arbitration and remand for the district court to consider the remaining three factors under *Stout v. J.D. Byrider*.