[Cite as *Ellis v. Setjo, L.L.C.*, 2025-Ohio-4844.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

SHARON ELLIS,                                    :

    Plaintiff-Appellee,                   :

    v.                                    :

SETJO, LLC, ET AL.,                              :

    Defendants-Appellants.                :

No. 114735

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED AND REMANDED
**RELEASED AND JOURNALIZED:** October 23, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-24-106986

---

### *Appearances:*

The Legal Aid Society of Cleveland, Philip D. Althouse, Bilal R. Mozaffar, and Barbara R. Barreno-Paschall, *for appellee*.

Hauser Law LLC and Laura A. Hauser, *for appellants*.

MICHAEL JOHN RYAN, P.J.:

{¶ 1} Defendants-appellants Setjo, LLC d.b.a. Kia of Bedford and Hyundai Capital America d.b.a. Kia Finance America (collectively referred to as "Kia") appeal

the trial court's denial of its motion to stay pending arbitration. For the reasons that follow, we affirm and remand.

**Background**

{¶ 2} In 2024, plaintiff-appellee Sharon Ellis filed a complaint against Kia and Tansunia Haugabook ("Haugabook"), Ellis's former caretaker.[1] As to Kia, Ellis alleged fraud in the inducement, violations of the Ohio Consumer Sales Practices Act, civil conspiracy, and sought a declaratory judgment that a contract Ellis signed for the purchase of a 2023 Kia be rendered void.

{¶ 3} Kia filed a "motion to dismiss or stay pending arbitration," alleging that Ellis signed two arbitration agreements and, therefore, must arbitrate her claims against Kia. Ellis filed a motion to extend time to file a brief in opposition. The court granted Ellis an extension and stated, "No Reply Briefs" in its judgment entry. Ellis filed her brief in opposition, which included her affidavit. Notwithstanding the trial court's order, Kia filed a reply brief. Ellis moved to strike the reply brief, which the trial court granted, referencing its earlier entry in which it stated, "No Reply Briefs." Because the reply brief was stricken, it is not listed on the trial court's docket and its contents will not be considered part of this appeal.[2]

{¶ 4} Ellis was a resident of Fedor Manor, a senior living facility in Lakewood, Ohio. Ellis was over 70 years old, required a walker to ambulate, and was hearing-

---

[1] Haugabook is not a party to this appeal.

[2] In addition, any non-procedural references to the reply brief will not be considered.

and vision-impaired.[3]  Specifically, Ellis was blind in one eye and had limited vision in the other; she required the use of a magnifying device to be able to read.  Due to Ellis's disabling health conditions, she had not owned or operated a motor vehicle for several years and had relinquished her driver's license.

{¶ 5} In September 2022, Haugabook became Ellis's caretaker and was assigned to assist Ellis with day-to-day tasks such as grocery shopping, cooking, cleaning, and personal care.  Haugabook used her car when performing certain caretaking responsibilities.  She often complained to Ellis about the condition of her car and lamented that no one in her family was willing to help her purchase a replacement vehicle.  Ellis eventually told Haugabook that she would cosign for the purchase of a new vehicle.  Consistent with Ellis's intended role as a cosigner, Haugabook told Ellis that she (Haugabook) would select, purchase, and have title to the vehicle.

{¶ 6} On November 21 or 22, 2022, Haugabook drove Ellis to Kia of Bedford. [4]  Ellis averred that she was feeling ill but went anyway and waited several hours while Haugabook met with a salesperson and test drove a new 2023 Kia Forte.  Ellis informed dealership staff that she was feeling ill, having vomited several times

---

[3] Ellis was 76 years old at the time she filed her complaint.

[4] It is unclear whether Ellis went to the dealership with Haugabook on November 21 or November 22, 2022.  In Ellis's affidavit she uses both dates as the date she went to the dealership. The electronic retail installment contract ("RISC") was executed on November 22 and contained an arbitration clause.  A separate arbitration provision was purportedly executed on November 21.  The complaint lists the date as November 22, and Kia's motion to stay lists the date as "on or about November 22, 2022."

since arriving at the dealership. Ellis asked dealership staff if she could use their phone so she could call a taxi. According to Ellis, the staff told her that there was no phone available for her use.

{¶ 7} Eventually, Ellis and Haugabook met with a dealership employee to review and execute documents to finalize the transaction. Ellis averred that she believed that her involvement in the transaction was limited to serving as a cosigner for Haugabook and this belief was based upon statements from Haugabook, the salesperson, and other dealership staff.

{¶ 8} In her affidavit, Ellis referred to the staff member who assisted Haugabook and Ellis to execute the purchase agreements as a "dealership employee." She informed this dealership employee of her hearing and vision impairments. She told the employee she could not hear everything that was being said and could not read the documents that were being presented to her. Nevertheless, the parties continued the transaction, and Ellis affixed her electronic signature to several documents. Ellis averred that she remembered being asked to sign several documents, but that she did not know what she was signing and was never told anything about arbitration. Once the documents were signed, the dealership employee provided Haugabook with copies of documents from the transaction and the keys to the new car. Ellis did not receive any copies of the sales documents. While Ellis's name appears on the contract, Haugabook's does not, making Ellis the sole owner of the vehicle.

**{¶ 9}** In December 2023, Fedor Manor notified Haugabook's employer and the Lakewood police about issues Ellis was having with Haugabook, including Haugabook's unauthorized use of Ellis's credit card. It was not until the police investigation that Ellis states she discovered that she, not Haugabook, was the only owner listed on the Kia's title.

**{¶ 10}** Ellis retained counsel, who requested copies of all documents related to the sale of the car and, additionally, asked Kia to rescind the transaction. Kia only provided counsel with a copy of RISC, which did not include the separate arbitration agreement.[5] Kia told counsel that it would take back the car, but that Ellis would be responsible for any remaining payments on the contract.

**{¶ 11}** According to Ellis, prior to obtaining counsel, she never received a copy of the RISC or the separate arbitration agreement, either electronically or in paper form. Ellis averred that she was never in possession of the car. Haugabook failed to make payments on the car, racked up numerous parking tickets and fines, and refused to turn over the vehicle to Ellis.

**Assignments of Error**

> I. The trial court erred by denying Appellants' motion to stay the proceedings and compel arbitration.
>
> II. The trial court erred by denying Appellants the right to file a reply brief and by granting Appellee's motion to strike before allowing Appellants the opportunity to respond.

---

[5] Neither Ellis nor counsel knew about the November 21, 2022 arbitration agreement until Kia attached the agreement to its motion to stay.

**Law and Analysis**

{¶ 12} In the first assignment of error, Kia argues that the trial court erred by denying its motion to stay the proceedings and compel arbitration.

**Standard of Review**

{¶ 13} Generally, an appellate court reviews a trial court's decision to grant or deny a motion to compel arbitration for an abuse of discretion. *Smith v. Rezutek*, 2024-Ohio-5599, ¶ 5 (8th Dist.), citing *Simmons v. Extendicare Health Servs., Inc.*, 2016-Ohio-4831 (5th Dist.). An abuse of discretion occurs when a court exercises its judgment in an unwarranted way regarding a matter over which it has discretionary authority. *Johnson v. Abdullah*, 2021-Ohio-3304, ¶ 35.

{¶ 14} However, when a trial court's decision granting or denying a motion to compel arbitration or a motion to stay involves issues of contractual interpretation, the standard of review is de novo. *Cuyahoga Supply & Tool, Inc. v. BECDIR Constr. Co.*, 2024-Ohio-1375, ¶ 8 (8th Dist.), citing *McFarren v. Emeritus at Canton*, 2013-Ohio-3900 (5th Dist.). "'This court applies a de novo standard of review when evaluating the scope of an arbitration agreement, that is, whether a party has agreed to submit a certain issue to arbitration.'" *Little Aquanauts, L.L.C. v. Makovich & Pusti Architects, Inc.*, 2021-Ohio-942, ¶ 8 (8th Dist.), quoting *Seyfried v. O'Brien*, 2017-Ohio-286, ¶ 18 (8th Dist.).

**Whether Ellis Agreed to Arbitrate**

{¶ 15} Courts apply ordinary principles that govern the formation of contracts to determine whether a party has agreed to arbitrate. *Seyfried* at ¶ 19,

citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995). In order for a valid contract to exist, there must be mutual assent on the essential terms of the agreement, which is usually demonstrated by an offer, acceptance of the offer, and consideration. *Seyfried* at *id.*, citing *Reedy v. The Cincinnati Bengals, Inc.*, 143 Ohio App.3d 516, 521 (1st Dist. 2001).

{¶ 16} Kia contends that Ellis cannot avoid the terms of the arbitration agreements by claiming she did not read the contract. For a party to be bound to a contract, the party must consent to its terms, the contract must be certain and definite, and there must be a meeting of the minds of the parties. *Ameritech Publishing, Inc. v. Mayfield*, 2011-Ohio-2971, ¶ 13 (7th Dist.), citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366 (1991). As this court explained in *Rezutek*, 2024-Ohio-5599 (8th Dist.), "[t]hese elements must be met to have an enforceable contract, and a contract has not been formed if there is no meeting of the minds." *Id.* at ¶ 8, citing *Butcher v. Bally Total Fitness Corp.*, 2003-Ohio-1734, ¶ 28 (8th Dist.). Whether a contractual offer and acceptance have been made is a question of fact. *KeyBank Natl. Assn. v. Mazer Corp.*, 2010-Ohio-1508, ¶ 36 (8th Dist.).

{¶ 17} "In deciding whether an agreement to arbitrate is enforceable, courts may not consider arguments concerning the validity of the contract as a whole; instead, courts may only consider 'issues relating to the making and performance of the agreement to arbitrate.'" *Hines v. Natl. Entertainment Group, LLC*, 140 F.4th 322, 332 (6th Cir. 2025), citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388

U.S. 395, 404 (1967). Parties must expressly agree to the terms of arbitration to be compelled to relinquish the dispute to arbitration. *Rezutek* at ¶ 10.

{¶ 18} This case involves a consumer, Ellis, purchasing a vehicle from a business, Kia, which had superior knowledge of the transaction. "Ohio courts have recognized that such arbitration clauses are subject to considerable skepticism upon review, because of the disparity in the bargaining positions of the parties." *Felix v. Ganley Chevrolet, Inc.*, 2006-Ohio-4500, ¶ 26, citing *Eagle v. Fred Martin Motor Co.*, 2004-Ohio-829 (9th Dist.). "Indeed, an arbitration clause involved in a consumer transaction, 'necessarily engenders more reservations than an arbitration clause in a different setting, such as in a collective bargaining agreement, a commercial contract between two businesses, or a brokerage agreement.'" *Felix* at *id.*, quoting *Williams v. Aetna Fin. Co.*, 83 Ohio St.3d 464, 472 (1998).

{¶ 19} Ellis purportedly executed two separate arbitration provisions, one on November 21, 2022, and one on November 22, 2022, that was embedded in the RISC.

{¶ 20} Kia claims that Ellis is bound by both arbitration provisions.

{¶ 21} A review of the two arbitration agreements shows that they differ in several respects. The RISC agreement provides, in part, that either party can choose to arbitrate a dispute and can choose either the American Arbitration Association ("AAA") or "any other organization to conduct the arbitration subject to our approval." The November 21, 2022 agreement, however, provides that the parties

"will submit any dispute" and that the arbitration "shall proceed before a single arbitrator appointed by the [AAA]."

{¶ 22} As to costs, the RISC agreement limited the amount Kia would be responsible for. The agreement stated that Kia "will pay your filing, administration, service or case management fee and your arbitrator or hearing fee all up to a maximum of $5000, unless the law or the rules of the chosen arbitration organization require us to pay more." It also provided that Ellis may be responsible to reimburse Kia for its costs: "[t]he amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law." As to who will pay for attorneys, experts, and other costs, the agreement provided that "each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law." The November 21 agreement, however, provided that Kia would reimburse all fees but did not contain a provision for reimbursement of arbitration costs. As to who would pay for attorneys, experts, and other costs, the November 21 agreement simply stated that the "[p]urchaser is encouraged to seek representation by counsel for the arbitration provision."

{¶ 23} As to venue, the RISC states that the arbitration will take place either in a federal district court where the buyer resided or in the county where the contract was executed. Conversely, the November 21 agreement states that arbitration "shall take place in the county in which the dealership maintains its principal place of business."

{¶ 24} Finally, and perhaps most importantly, the arbitration agreement embedded in the RISC is a contract of adhesion. A "contract of adhesion" is, "a standardized form contract prepared by one party, and offered to the weaker party, usually a consumer, who has no realistic choice as to the contract terms." *Love v. Crestmont Cadillac*, 2017-Ohio-1555, ¶ 13 (8th Dist.), citing *Taylor Bldg. Corp. of Am. v. Benfield*, 2008-Ohio-938, ¶ 48. In *Felix*, 2006-Ohio-4500, the Ohio Supreme Court cautioned that

> the presumption in favor of arbitration should be substantially weaker in a case . . . when there are strong indications that the contract at issue is an adhesion contract, and the arbitration clause itself appears to be adhesive in nature. In this situation there arises considerable doubt that any true agreement ever existed to submit disputes to arbitration.

*Id.*, citing *Eagle*, 2004-Ohio-829 (9th Dist.).

{¶ 25} The RISC did not provide Ellis with an option to waive the arbitration provision, thereby leaving her only with the choice to agree to arbitrate as a condition of purchasing a vehicle. On the contrary, the November 21 agreement states in bold and capitalized letters that "arbitration is not required for the purchase or financing of [the] vehicle."

{¶ 26} As a general rule, contracts should be construed against the drafting party. *Fouty v. Ohio Dept. of Youth Servs.*, 2006-Ohio-2957, ¶ 64 (10th Dist.). Moreover, considered together, the two arbitration provisions were neither certain nor definite. *Rayess v. Educational Comm. for Foreign Med. Graduates*, 2012-Ohio-5676, ¶ 19, quoting *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations*, 61 Ohio St.3d 366, 369 (1991) ("[T]o be enforceable, 'the contract must

be definite and certain.'"). Without certain and definite terms, there can be no meeting of the minds. *See Hoyt v. Nationwide Mut. Ins. Co.*, 2005-Ohio-6367, ¶ 40 (10th Dist.); *Danziger & De Llano, LLP v. Morgan Verkamp, LLC*, 2023-Ohio-1728, ¶ 31 (1st Dist.).

{¶ 27} We find that there was no meeting of the minds regarding arbitration. Based on the terms of the arbitration agreements, Ellis could not know when signing the agreements whether she was bound to arbitrate a dispute, whether signing the arbitration agreements would affect her ability to purchase the vehicle, which body she could use to arbitrate the dispute, what the costs of arbitration would be, or where the arbitration could take place.

{¶ 28} Thus, since there was no meeting of the minds, there was no agreement to arbitrate. Because an agreement to arbitrate never existed, a legal analysis regarding unconscionability is unnecessary. *See McFadden v. Charter Communications, Inc.*, 2024-Ohio-4564, ¶ 16 (9th Dist.). Therefore, the trial court did not err in denying Kia's motion to compel arbitration.

{¶ 29} The first assignment of error is overruled.

**Kia's Reply Brief**

{¶ 30} In the second assignment of error, Kia argues that the trial court abused its discretion in striking its reply brief. It is well established in Ohio that a trial court has "broad discretion in managing its docket, setting case schedules, and scheduling orders." *Williams v. Hung*, 2024-Ohio-4682, ¶ 15 (8th Dist.), citing *Williams v. Schneider*, 2018-Ohio-968, ¶ 146 (8th Dist.).

{¶ 31} Ellis filed her complaint on November 9, 2024. Kia filed its motion to stay on December 12, 2024. Ellis moved for an extension of time to respond to the motion to stay, which the court granted on December 16, 2024. It was in this entry that the trial court stated, "No Reply Briefs." Ellis filed her brief in opposition on January 3, 2025. Despite the trial court's order that were no reply briefs were to be accepted, Kia filed a reply brief on January 8, 2025. Ellis moved to strike the brief on January 9, 2025, which the court granted.

{¶ 32} Kia relies on Civ.R. 6 to support its argument that the trial court was required to consider its reply brief.

{¶ 33} Civ.R. 6(C)(1) states:

(1) Motion responses and movants' replies generally.

Responses to a written motion, other than motions for summary judgment, may be served within fourteen days after service of the motion. Responses to motions for summary judgment may be served within twenty-eight days after service of the motion. A movant's reply to a response to any written motion may be served within seven days after service of the response to the motion.

{¶ 34} Assuming that Kia is correct and that Civ.R. 6(C)(1) required the trial court to allow Kia to file a responsive brief, despite the court's discretion to control its own docket, any error was harmless based on the disposition of the first assigned error.

{¶ 35} Civ.R. 61 provides that

[n]o error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action

appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

{¶ 36} Kia contends that that Ellis raised "novel issues" in her responsive brief, therefore, it should have been allowed to respond to her arguments via its reply brief. However, a review of the motion to stay and reply to the motion to stay show that Ellis did not raise any new issues in her responsive brief. Additionally, during oral argument, Kia conceded that Ellis's responsive brief did not raise any new issues.

{¶ 37} Even if Kia had been allowed to file a brief in response to Ellis's brief in opposition to Kia's motion to stay pending arbitration, Kia cannot show that the outcome would have been different or the court's striking of its brief affected its substantial rights. In the first assignment of error, we determined that the arbitration clauses were not valid because no contract had been formed based on the inconsistencies in the arbitration provisions. We did not take into consideration Ellis's averments regarding the circumstances of the transaction.

{¶ 38} Considering the above, the second assignment of error is overruled.

{¶ 39} The trial court did not err when it denied Kia's motion to stay pending arbitration and any error in striking Kia's reply brief constituted harmless error.

{¶ 40} Judgment affirmed and remanded.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MICHAEL JOHN RYAN, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
JILL FLAGG LANZINGER, J.,* CONCUR

(*Sitting by assignment: Jill Flagg Lanzinger, J., of the Ninth District Court of Appeals.)